**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Billy Ray SCHILLING, Arthur W.
Anderson, and Hunter Lane, Jr.,
Defendants-Appellees.**

No. 77-5025.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1977.

Decided Sept. 2, 1977.

Thomas F. Turley, Jr., U. S. Atty., Glen G. Reid, Jr., Memphis, Tenn., for plaintiff-appellant.

Warner Hodges, Memphis, Tenn., for Schilling.

Charles L. Sullivan, Clarksdale, Miss., for Anderson.

James M. Manire, Memphis, Tenn., for Lane.

Before WEICK and EDWARDS, Circuit Judges and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

The government appeals from an order of the United States District Court for the Western District of Tennessee, Western Division, dismissing an indictment, the first six counts of which charged all defendants with use of the mails to effectuate a fraudulent scheme in violation of Sections 1341 and 2 of 18 U.S.C. Counts seven and eight charged defendants Lane and Anderson with willfully endeavoring to obstruct an F.B.I. investigation relating to a violation of Section 1510 of 18 U.S.C. The government does not appeal the dismissal of these two counts.

We give herein, a statement of the essential facts as summarized from the indictment by the District Judge:

"It is alleged that in January, 1973, defendant Anderson, in behalf of himself and defendants Lane and Schilling (and two others not named or indicted), contracted through defendant Lane as Trustee to purchase a fifty-three acre tract for $185,298.00, each person to make a down payment of $9,500, with a note, secured by mortgage, to be given for the balance. The trade was closed in April, 1973. Thereafter defendants sought to sell the property to the Chickasaw Basin Authority and that, in less than a year, the Authority contracted to purchase the land for $614,231.53.

"In order to consumate the sale, it was necessary for the Shelby County Quarterly Court (a legislative body) to approve it and appropriate the purchase money. Defendant Schilling is a member of the Quarterly Court.

"In January, 1974, the Quarterly Court approved the purchase and appropriated and authorized disbursement of the purchase money; but thereafter the Quarterly Court learned that defendant Schilling would receive one-fifth of the net proceeds with the result that, in February, 1974, it rescinded its approval.

"Later in February, 1974, to persuade the Quarterly Court to approve the purchase, defendant Schilling, with knowledge of defendants Lane and Anderson, 'purportedly transferred his ownership interest in the land to [defendant Anderson] for $1.00 and other unspecified consideration as a means to falsely represent that [defendant Schilling] would not share in the proceeds * * *' At that time defendant Schilling announced in a meeting of the Quarterly Court that 'he had divested himself of all interest in the land * * *' to induce the false impression that he would not receive any profit or participate in the division of the proceeds. Defendant Schilling's statement in the meeting of the Quarterly Court, quoted verbatim in the indictment, may be summarized as follows:

"At the time he participated in the purchase, defendant Schilling and his associates did not know that the Corps of Engineers would determine that this land should be acquired for a flood control project. Schilling further stated that he did not vote on the original approval of the appropriation by the Quarterly Court and that he had been advised by the County Attorney and his own attorney that it was sufficient if he recused himself from voting on any matter affecting this property. Schilling further stated that, nevertheless, some of his fellow members of the Quarterly Court expressed concern about appropriating money for the purchase of land in which Schilling had an interest and that he agreed that an appearance of impropriety should be avoided. Therefore, Schilling said, 'I have decided to divest myself of one-fifth interest in the 53 acre tract by conveying my interest to one of my partners.' Schilling further said that there had been no improper influence on the Authority to induce it to purchase the land, that the contract price had been arrived at under the usual procedures,

and that the Authority, though concerned about the rapid appreciation of land values in the area, was convinced that this land was fairly valued.

"It is further alleged in the indictment that in April, 1974, to spread the false impression that defendant Schilling would not share in the proceeds, the defendants wrote a letter to the Chairman of the Authority stating that defendant Schilling had divested himself of all ownership interest and threatened to sue if the land was not purchased.

"It is further alleged that, following the aforesaid letter, the Quarterly Court, having been advised that defendant Schilling '* * * would not be sharing in the proceeds * * *' again voted to approve the appropriation for the purchase and that, upon the closing, defendant Anderson received two-fifths of the net proceeds of the sale as his share and that defendant Anderson then delivered $87,384.24 to the defendant Schilling representing one-fifth of the net proceeds."

The District Judge dismissed counts one through six for the reason " * * * on a fair interpretation of the indictment, there is no fraud alleged, or, if fraud is alleged, it is at the most only constructive and was not active fraud."

He supports this conclusion with the following statements:

"The indictment does *not* allege that defendant Schilling did not convey his interest in this land prior to making the representation alleged in the indictment."

\* \* \* \* \* \*

"The indictment does *not* allege that the price for which the land was being sold to the Authority was greater than its fair market value at that time." * * * "Thus the indictment does not allege and it is not contended by the government that the defendants intended to inflict or did inflict financial harm on the taxpayers."

\* \* \* \* \* \*

"After all, defendant Schilling's interest in this land was a very valuable asset, which was known by the Quarterly Court. If the representation could not fairly be construed to mean that defendant Schilling had given his interest away, then it was obvious that he had some agreement with defendant Anderson to pay him something in some way for his interest."

The issue thus presented is whether the facts as alleged in the indictment constitute a crime under Section 1341, the mail fraud statute.

 Section 1341, so far as pertinent reads as follows:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money * * * by means of false or fraudulent pretenses, representations or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatsoever to be sent or delivered by the Postal Service, * * * or knowingly causes to be delivered by mail according to the direction thereon, * * * any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

As stated by the Supreme Court,

"The elements of the offense of mail fraud under 18 U.S.C. * * * § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). See also *United States v. Ferguson*, 529 F.2d 226, 228 (6th Cir. 1976).

Count one of the indictment now before the Court alleges defendants

"* * * devised and intended to devise a scheme and artifice to defraud (a) the consistency of defendant, BILLY RAY SCHILLING, whose interest he had been duly elected to represent * * * of their right to his conscientious, loyal, faithful and unbiased services * * * free from partiality, wilful omission * * * inconsistent with the interests of his constituency * * * (b) the con-

stituency of fellow-elected members of defendant, BILLY RAY SCHILLING * * * and the fellow-elected members of defendant, BILLY RAY SCHILLING, themselves by affirmatively misrepresenting a material fact to them so as to cause said fellow-elected members to exercise their judgment in a matter pending before them * * * thereby denying to the fellow-elected members their right to rely on the truth of material representation made by a fellow-elected member * * * and their right to faithfully perform their duties and responsibilities to their constituents unfettered by dishonesty on the part of a fellow member * * *."

The essence of this scheme is that after the Shelby County Court rescinded its approval of the sale of the land in question, appellee Schilling purportedly transferred his interest in the land to his co-appellee, Anderson, for $1.00 and other unspecified consideration. It is alleged that this was for the purpose of inducing the Shelby County Court to approve the sale and appropriate the money for its purchase.

The District Judge in support of his motion to dismiss on the ground that no fraud is alleged or, if fraud is alleged, it is only constructive fraud, cites *Epstein v. United States*, 174 F.2d 754 (6th Cir. 1949).

We think the District Judge interpreted this case too narrowly. The case does indeed hold, p. 766, that,

"In order to prove a scheme to defraud under the mail fraud statute, there must be proof of a scheme embracing active or actual fraud. A charge of using the mails to carry out a scheme to defraud cannot be maintained on proof of mere constructive fraud."

On p. 765, the Court says,

"Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to *surrender some legal right, and which accomplishes the end designed.*" (Emphasis added).

Count one of the indictment alleges in effect that this scheme caused the members of the County Court to act favorably on the sale of the land and the appropriation of the money for its sale to the Chickasaw Basin Authority. The plain inference is that it caused the members of the Court to surrender their right to object to the sale which they obviously would have done as indicated by their previous action in cancelling the sale. It is obvious, too, that the scheme accomplished the purpose for which it was intended, the sale of the land with Schilling receiving his one-fifth share of the proceeds of the sale.

It is not in dispute that a letter was deposited in the United States Mail on April 2, 1974, in the execution of this scheme. If Anderson and Lane, Schilling's co-partners were not directly involved in the fraud, they were liable under Section 2, 18 U.S.C., the aiding and abetting statute.

We conclude that count one of the indictment states an offense under Section 1341 of Title 18 U.S.C. and that the District Judge was in error in dismissing it.

Count two of the indictment charges that the appellees,

"devised and intended to devise a scheme and artifice for obtaining money from the government of Shelby County, Tennessee, through the expenditure of public funds by the Shelby County, Tennessee, Quarterly Court by means of false pretenses and representations, well-knowing at the time that the pretenses and representations were false when made * * *"

The scheme is the same scheme as alleged in count one. The false pretenses are that Schilling purported to transfer his interest in the land to Anderson to induce the Quarterly Court to approve the sale and appropriate the money for it. The appellees knew that the transfer was not absolute and that Schilling would receive his one-fifth share of the proceeds of the sale if, as and when it would be consummated.

Section 1341 proscribes obtaining money "* * * by means of false or fraudulent pretenses, representations or promises, * * *" when the United States mails are used to execute the plan or scheme.

It appears that the allegations of count two come squarely within the provisions of Section 1341, prohibiting the obtaining money by false pretenses and representations. It is alleged that the mails were used in furtherance of and for the purpose of executing the scheme of obtaining money by false pretenses. Thus, we conclude that count two states an offense under Section 1341 of Title 18 U.S.C.

Counts three to six are each based on the same scheme and false pretenses and misrepresentations, as is count two. An additional use of the mail is alleged in their execution. They likewise state an offense under Section 1341.

We are of the opinion that each count of the indictment states an offense and presents a question for trial to a jury.

The judgment of the District Court is REVERSED and the case remanded with instructions to reinstate the indictment.