**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward STULGA, Defendant-Appellant.**

**No. 78–5017.**

United States Court of Appeals, Sixth Circuit.

Argued June 21, 1978.

Decided Sept. 25, 1978.

Rehearing and Rehearing En Banc Denied Dec. 11, 1978.

---

Thomas A. Livingston, Dennis J. Clark, Pittsburgh, Pa., for defendant-appellant.

W. J. Michael Cody, U. S. Atty., W. Hickman Ewing, Jr., Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and CECIL and PECK, Senior Circuit Judges.

CECIL, Senior Circuit Judge.

This is an appeal by the appellant, Edward Stulga, from his conviction in the United States District Court for the Western District of Tennessee, Western Division,

on count eight of an indictment charging him with conspiracy to violate Sections 471, 472 and 473 of Title 18, U.S.C.

The offense charged is that the appellant in the Eastern District of Tennessee and other Districts in several states conspired (18 U.S.C. § 371) with others to defraud the United States by keeping in their possession and concealing with intent to defraud, by exchanging, transferring, receiving and delivering forged and altered United States securities with intent that they be passed as true and genuine, and by forging, passing and uttering as true and genuine forged United States securities, to wit: one hundred ninety-two United States Savings Bonds, Series "E", with a total face value of $25,200, made payable to Albert F. Pierce and Rebecca Pierce.

According to the indictment, the stolen bonds were transferred to Dennis Garner in Huron, Tennessee. In April of 1973, Garner transported the bonds to Augusta, Georgia, where he transferred them to William Spaniard and Leo Byrnes. Garner, Spaniard and Byrnes, according to the indictment, agreed that Spaniard and Byrnes would forge endorsements on the bonds, cash the bonds and divide the proceeds into three equal shares. Defendant Stulga's participation in the scheme allegedly consisted of his serving as an intermediary between Garner and Spaniard and Byrnes, thereby making Stulga a participant in an unlawful conspiracy as well as committing the substantive violations.

The appellant was tried alone to a jury on count eight of the indictment, found guilty and sentenced to three years imprisonment.

■ It is claimed on behalf of the appellant that the trial judge erred in instructing the jury as to the appropriate standard by which to evaluate accomplice exculpatory testimony. This case was before the Court on a previous appeal and was reversed because the instructions of the trial judge on the subject of accomplice testimony did not conform to the rule in *Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972). (*United States v. Stulga,* 531 F.2d 1377 (6th Cir. 1976)).

The instructions given on the subject on retrial are as follows:

"There has been testimony in this trial from witnesses whom you may find to have been accomplices. An accomplice is one who unites with another in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the criminal act charged. However, the jury should keep in mind that such testimony is to be received with caution and weighed with great care.

"The testimony of an accomplice alone, if believed by you, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. You should not convict a defendant upon the unsupported testimony of an accomplice, however, unless you believe that unsupported testimony beyond all reasonable doubt.

"I further charge you that, to the extent, if any, that you find the testimony of an accomplice tends to support the contention of the defendant, that is, tends to show the defendant to be not guilty, you may consider such testimony in that respect and weigh such testimony, along with the other evidence in the case, under the rules given you in this charge, and you may find the defendant not guilty based on an accomplice's testimony."

We conclude that the instructions, as given on retrial, expressed the law on accomplice testimony, were adequate and in accordance with the law of *Cool v. United States, supra,* and our opinion in the prior appeal (531 F.2d 1377).

The trial judge defined accomplice and said that an accomplice was competent to testify. He said, further, that accomplice testimony alone may be sufficient to sustain a guilty verdict even though not corroborated or supported by other testimony. In this connection, he said, in effect, if there were no other testimony but accomplice testimony, the jury would have to

apply the "beyond a reasonable doubt" rule before making a finding of guilty.

In further explanation he said that if accomplice testimony tended to support the defendant's defense, it should be considered and weighed along with all other evidence in the case under the rules for considering evidence as defined in the charge generally. He properly instructed the jury that it should receive such testimony with caution and weigh it with great care. We find no basis for further instructions on burden of proof distinguishing between incriminatory accomplices and exculpatory accomplices.

■ Another objection to the instructions of the trial judge to the jury is that the court erred by failing to instruct the jury on each element of the indictment and the law applicable thereto.

In the previous trial our Court sustained the indictment but held that it was inartfully drawn and that it should have alleged that it was framed under Section 495, instead of Sections 471–473, Title 18, U.S.C. (*United States v. Stulga, supra*).

In the first paragraph of the instructions to which objection is made, the trial judge defined the offense as charged in the indictment and in violation of Section 495, as follows:

" * * * whoever falsely forges or whoever knowingly utters and publishes as true any falsely forged certificate, or contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States any sum of money thereby commits a federal criminal offense."

He then instructed the jury (as is alleged in the indictment) that the appellant Stulga was charged with violating that statute by

"forging, uttering and passing as true and genuine securities of the United States."

1. Since *Graves,* courts have generally recognized that an inference rather than a presumption of unfavorable testimony is raised in such a situation. *United States v. Blakemore,* 489

This was an offense as defined in Section 495, and we find no error in the instruction as given.

The language which it is claimed was not included in the instruction

" * * * by keeping in their possession and concealing, with intent to defraud, by exchanging, transferring, receiving and delivering forged and altered securities of the United States with intent that same be passed as true and genuine."

alleged that the securities were *forged* and was an offense under Sections 471–473. There was no evidence that the securities were forged and, consequently, no reason to instruct on the offense. It was stipulated that securities were genuine.

Neither *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), nor *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), are in point with the case at bar. The *Bain* case involved the amendment of an indictment by striking a pertinent provision from it. In the *Stirone* case the trial judge charged an element of crime which was not alleged in the indictment. In the case at bar it is not claimed that the indictment was amended or that the court charged a crime that was not included in the indictment.

■ It is claimed on behalf of the appellant that the trial judge erred in refusing to instruct the jury, according to the defense request, that the jury could draw an adverse inference from the prosecution's failure to call as a witness one Leo Byrnes. Byrnes was charged in the indictment as an unindicted co-conspirator.

In *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893), the Court announced the principle:

" * * * if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption [1] that the testimony, if produced, would be unfavorable."

F.2d 193, 195 (6th Cir. 1973); *United States v. Mahone,* 537 F.2d 922, 926, fn. 3 (7th Cir. 1976); *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).

The prosecution called Byrnes as a witness and examined him outside the jury. During this examination, Byrnes, who had not been tried on charges in the indictment at the time of this trial, stated that he would refuse to testify about his alleged participation in the negotiation of the securities on the ground that such testimony might incriminate him. Neither the prosecution nor the defense took any further action toward this witness until the defense requested an instruction just before the judge instructed the jury.

The prosecution did not make any application for a grant of immunity to Byrnes nor did the defense make any motion relative to obtaining such immunity for Byrnes or seeking to compel the government to grant immunity to Byrnes. According to the record, defense counsel was aware that he could have taken such action. Had defendant taken such action, the trial court could have made pertinent inquiries and findings relative to the existence, or lack of existence, of any relationship between the prosecution and Byrnes making Byrnes' testimony unavailable in a pragmatic sense to defendant. In view of his failure to take such a step to assert his interest, it is submitted that the trial court did not err by refusing to allow him to benefit from the prosecution's failure to apply for immunity to Byrnes or in failing to instruct on an unfavorable inference because of a witness not called by the prosecution.

■ Another claim made on behalf of the appellant is that the court erred in denying his motion to dismiss the indictment for the reason that his statutory and Sixth Amendment Constitutional rights to a speedy trial were denied.

The Sixth Amendment provides in part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy trial, * * * ." Counsel cites no cases interpreting what is a speedy trial under this Amendment. See *Trigg v. State of Tennessee,* 507 F.2d 949 (6th Cir. 1974); *cert. den.* 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414 (1975), where it was held that two years' delay under the circumstances, in bringing defendant to trial, was not a denial of speedy trial. See also *United States v. Gibson,* 513 F.2d 978 (6th Cir. 1975); *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Counsel also cites, in support of his claim, Section 3161(e) of the Speedy Trial Act as follows:

" * * * If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within sixty days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within sixty days impractical."

Pertinent dates with reference to the retrial of this case are:

**May 10, 1976**—The decision of this Court reversing the first trial became final.

**October 5, 1977**—Retrial began.

In the interim between reversal and retrial, there were proceedings as follows:

**July 16, 1976**—Defendant filed motion to dismiss on ground of insufficient evidence and double jeopardy.

**June 8, 1977**—Decision of our Court affirming trial judge's decision denying motion became final.

**September 19, 1977**—Defendant filed motion to dismiss on ground he was not granted a speedy trial.

**September 19, 1977**—Defendant filed motion requesting Trial Judge Brown to voluntarily withdraw as presiding judge over retrial of the case.

**September 26, 1977**—Trial Judge denied motions to dismiss and to withdraw.

The defendant was retried only fourteen days after the last pre-trial motion was overruled.

The sanction of the statute for failure to meet the statutory time limits for retrial does not take effect until July 1, 1979.

(Section 3163(c), Title 18, U.S.C.) See *United States v. Lee,* 575 F.2d 1184 (1978).

We conclude that the trial judge did not err in denying the defense motion to dismiss for failure to grant a speedy trial.

 Defendant argues that there is insufficient evidence to support his conviction because there was no evidence presented that the securities with which he dealt were "forged and altered securities" as charged in the indictment. It is true that the securities which were the subject of this prosecution were genuine securities containing forged endorsements rather than "forged and altered securities."

This Court, however, in *United States v. Garner,* 529 F.2d 962 (6th Cir. 1976), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376 (1976), a decision adjudicating the appeal of defendant's co-conspirators, determined that the indictment was sufficient to charge a violation of Title 18 U.S.C. Section 495 even though the indictment made reference only to Title 18 U.S.C. Sections 471–473. Accordingly, there need not have been any evidence presented that the securities at issue in this case were "forged and altered securities."

In view thereof, and in view of the fact that this Court, in a prior appeal of defendant Stulga, determined that sufficient evidence was presented to warrant his conviction under Title 18, U.S.C. Section 495, defendant's assignment of error related to sufficiency of the evidence is without merit. (See Order of this Court in *United States v. Stulga,* dated May 10, 1977.)

 Counsel for appellant argues that the trial judge erred in overruling his motion for a mistrial for the reason that the prosecutor, in his argument to the jury, expressed his personal opinion that the defendant was guilty.

The language to which objection is made is as follows:

"The judge will charge you, I think, you should retire and return a verdict that truth dictates and justice demands. I submit the truth is, in this case, Mr. Stulga is guilty.

" . . . I submit that is how it happened Mr. Stulga was involved in a bond-cashing conspiracy and an operation where they took somebody's bonds and negotiated them across the country. They forged the people's name on them and passed them across the country. And he is guilty as charged."

The use of the words "I submit" are not the equivalent of expressing a personal opinion. To paraphrase, it would be "I submit that upon the facts as shown by the evidence." The case of *United States v. Leon,* 534 F.2d 667 (6th Cir. 1976), is not in point in the case at bar.

 An objection is made on behalf of the appellant that the interview notes of F.B.I. Agent Robertson were destroyed after they were used to make a typewritten statement which the government witness, Spaniard, signed. It is claimed that this impaired the defense's right of cross examination.

The F.B.I. agent had interviewed the witness shortly after the crime and had taken handwritten notes from which a statement was typed and signed by the witness. On cross examination of the F.B.I. agent, counsel made a request that the handwritten notes be produced and was told that they were destroyed when the statement was signed.

Robertson testified that some things said by witness Spaniard and included in the notes were not included in the typed statement. At trial, Spaniard stated that he did not remember everything that he told the agents in the statement but that everything that was in the statement was true as of the date that it was signed, September 26, 1973.

Both the F.B.I. agent, Robertson, and witness Spaniard, testified at the trial and were subject to thorough cross examination.

The rule of *Brady v. Maryland* in 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to which reference is made involved the suppression or withholding of evidence which was in existence and which was deliberately withheld by the prosecutor al-

though it would have been included with other evidence requested by the defense.

In *United States v. Harris,* 543 F.2d 1247 (9th Cir. 1976); *United States v. Vella,* 562 F.2d 275 (3rd Cir. 1977), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); and *United States v. Harrison,* 173 U.S.App.D.C. 81, 524 F.2d 421 (1975),[2] the respective Courts of Appeals held that the handwritten notes of the F.B.I. agents should be preserved but in each case held that it was harmless error or, under the circumstances, did not require reversal.

No prejudice was shown to the appellant by the destruction of the handwritten notes which was in keeping with F.B.I. policy and not done for the purpose of destroying evidence. Nor does it appear under the circumstances of this case that the sanction of reversal or dismissal should have been imposed.

 Counsel for appellant claims that trial Judge Bailey Brown abused his discretion in not recusing himself from the retrial of this case.

On September 19, 1977, after the retrial date was set for October 3, 1977, counsel moved to have Judge Brown voluntarily withdraw from the case. Judge Brown did not choose to voluntarily withdraw and overruled the motion. No prejudice is shown and we do not find any abuse of discretion on the part of Judge Brown.

Affirmed.

2. See also *United States v. Frederick,* 583 F.2d 273 (6th Cir. 1978).