897 F.2d 530
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ocelia M. PERKINS; Donald J. McQueen; Joyce Scott; Pamela
H. Williams; Anders Migdaleck; and Stella H.
Ware, Defendants-Appellants.
 Nos. 88-1953 to 88-1956, 88-2031 and 88-2110.
 United States Court of Appeals, Sixth Circuit.
 March 7, 1990.
 
 BEFORE DAVID A. NELSON and RYAN, Circuit Judges; and RONALD E. MEREDITH, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendants Anders Migdaleck, Donald J. McQueen and Pamela H. Williams appeal their convictions for mail fraud, 18 U.S.C. Sec. 1341, and interstate transportation of securities taken by fraud, 18 U.S.C. Sec. 2314. Defendants Ocelia M. Perkins, Stella H. Ware and Joyce Scott appeal their convictions for mail fraud, 18 U.S.C. Sec. 1341. All convictions arose from a scheme to defraud insurance companies by intentionally setting fires to residential homes located in the Detroit area in order to collect insurance proceeds. Several issues are raised on appeal but none require reversal. Accordingly, we affirm.
 
 I.
 
 2
 Defendant Migdaleck, a licensed contractor and owner of Town and Country Builders and Anders Construction Company purportedly organized the arson scheme and paid the participants from the insurance proceeds. Defendants McQueen, Williams and Perkins were homeowners who arranged to have fires set at their respective homes. Defendant Ware helped arrange the fire at defendant Perkins' home. In each case, claims were made with the homeowners' insurance carriers through use of mails.
 
 
 3
 On January 6, 1988, all the defendants and others were charged with mail fraud, 18 U.S.C. Sec. 1341, and interstate transportation of securities taken by fraud, 18 U.S.C. Sec. 2314, in a twenty-three count indictment. Defendant Midgaleck was indicted on all twenty-three counts as was Anita Vianveva Sackett, a licensed public adjuster, who worked for defendant Migdaleck. Sackett entered into a plea agreement and testified at trial in exchange for leniency. The arsonists who set the fires also testified.
 
 
 4
 The first two counts involved the January 18, 1983 arson fire at defendant McQueens' residence. Migdaleck and McQueen were charged with mail fraud and interstate transportation of securities taken by fraud. Migdaleck was acquitted and McQueen was convicted.
 
 
 5
 Counts three and four involved the February 25, 1983 arson fire at the residence of Ronald Pitts. Pitts, Migdaleck and McQueen were charged with two counts of mail fraud. Pitts pled guilty prior to trial and testified in exchange for leniency. Both Migdaleck and McQueen were convicted.
 
 
 6
 Counts five through nine involved the July 27, 1984 arson fire at White's residence. Migdaleck and White were charged with five counts of mail fraud. Both were convicted.
 
 
 7
 Counts ten through twelve involved the October 20, 1983 arson fire at defendant Williams' residence. Migdaleck, White and Williams were charged with mail fraud and two counts of interstate transportation of securities taken by fraud. Migdaleck was acquitted and White and Williams were convicted.
 
 
 8
 Counts thirteen and fourteen involved the May 11, 1983 arson fire at Perkins' home. Migdaleck, Perkins and Ware were charged with two counts of mail fraud. All were convicted.
 
 
 9
 Counts fifteen through twenty involved the January 15, 1983 arson fire at the home of Doris Lauderdale. Lauderdale and Migdaleck were charged with interstate transportation of securities taken by fraud and five counts of mail fraud. Both were acquitted.
 
 
 10
 Counts twenty-one and twenty-two involved the March 15, 1983 arson fire at the home of Joyce Manns. Migdaleck and Scott were charged with two counts of mail fraud. Migdaleck was acquitted and Scott was convicted.
 
 
 11
 Count twenty-three involved the January 18, 1984 arson fire at a residence owned by Willie Dash. Migdaleck and White were charged with mail fraud. Both were convicted.
 
 
 12
 Following the imposition of sentences, defendants appealed. Michael White's appeal was dismissed as untimely.
 
 II. Defendant Migdaleck
 
 13
 A. Failure to Instruct Jury on Exculpatory Testimony.
 
 
 14
 Defendant Migdaleck contends the trial court erred in failing to properly instruct the jury, pursuant to Cool v. United States, 409 U.S. 100 (1972), and United States v. Stulga, 531 F.2d 1377 (6th Cir.1976), appeal after remand, 584 F.2d 142 (6th Cir.1978), concerning evaluation of the exculpatory testimony offered by the three arsonists.
 
 
 15
 The testimony of arsonists Al Meridith, Jr., Willie Weems and Adar Hassan was essentially favorable to defendant Migdaleck. The three testified that the arson fires were represented to Migdaleck as legitimate losses and all three witnesses inferred that Al Meredith, Sr. operated the scheme. However, Al Meredith, Sr. testified that Migdaleck knew about the scheme, had made Sackett a public adjustor to further the scheme, paid commissions to the arsonists, and provided the funds used to purchase the materials used to start the fires.
 
 
 16
 On appeal, defendant Migdaleck asserts the trial court erred in failing to give an instruction which would enhance the effect of the exculpatory testimony of the three arsonists.
 
 The court instructed the jury:
 
 17
 The testimony of one who asserts by his testimony that he is an accomplice may be received in evidence and considered by the jury even though not corroborated by other evidence and given such weight as the jury feels it should have. You should always keep in mind, however, that such testimony is always to be viewed with caution and considered with great care. You should never convict a Defendant upon the unsupported testimony of an alleged accomplice unless you believe that unsupported testimony beyond a reasonable doubt.
 
 
 18
 (Emphasis added.) This instruction was requested by defendant McQueen and is based on Devitt and Blackmar, Federal Jury Practice and Instructions, 3d ed, Sec. 17.06 (1977).
 
 
 19
 At trial, after the court finished instructing the jury, counsel for defendant Migdaleck objected to the foregoing instruction, stating that the instruction that should have been given is:
 
 
 20
 [I]f you believe the evidence of the accomplice, and you feel that that in and of itself is sufficient to satisfy you that it is proof of guilt beyond a reasonable doubt, then you may accept it.
 
 
 21
 On appeal, defendant contends that, based on his objection and requested single-sentence instruction, the trial court should have been alerted to its duty to instruct the jury on the standard for evaluating accomplice testimony pursuant to Cool v. United States, 409 U.S. 100 (1972), and United States v. Stulga, 531 F.2d 1377 (6th Cir.1976), appeal after remand, 584 F.2d 142 (6th Cir.1978). We disagree.
 
 
 22
 In Cool, the accomplice testified for the defense and his testimony was completely exculpatory. Over defense counsel's objection, the district court instructed the jury to consider the accomplice testimony if it found it true beyond a reasonable doubt. 409 U.S. at 102. The Supreme Court reversed, finding the instruction placed an improper burden on the defense, obstructed the defendant's sixth amendment right to present exculpatory accomplice testimony to the jury, and, in effect, reduced the government's burden of proof. 409 U.S. at 103, 104. In a footnote, the Court also found it confusing and unfair to instruct the jurors that they could convict on the basis of accomplice testimony without telling them they could also acquit on this basis. 409 U.S. at 103, n. 4.
 
 
 23
 In Stulga, several accomplices testified for the government. Two of them partially exculpated defendant. The defense counsel objected to the court's instruction on accomplice testimony and specifically requested that the jury be instructed that exculpatory testimony of an accomplice did not have to be believed beyond a reasonable doubt or by a preponderance. Id. at 1380. The court declined to do so. On appeal, this court held the trial court committed reversible error in failing to instruct the jury on the manner in which to evaluate an accomplice's exculpatory testimony in light of the "virtual dirth of inculpatory testimony" and the "wealth of exculpatory testimony." Id. at 1380. This court concluded that the lack of precision in the charge could have confused the jury and led it to conclude that in order to consider the accomplice's exculpatory testimony at all, it had to believe the testimony beyond a reasonable doubt. Id.[1]
 
 
 24
 Here, unlike the situation in Stulga or Cool, defense counsel's requested instruction was not a request that the jury be advised on how to evaluate exculpatory accomplice testimony (Stulga ), or a request to instruct the jury that accomplice testimony can provide the basis of acquittal (Cool ). Rather, defense counsel's objection and proposed instruction, in effect, asked the court to instruct the jury that it could accept inculpatory accomplice testimony if it believed the testimony beyond a reasonable doubt. It was essentially the same instruction as was given by the court, although the court's instruction stated the matter more understandably and more accurately.
 
 
 25
 We are presented then with a situation in which the defendant assigns error to the trial court's failure to instruct the jury as to the proper manner in which to evaluate exculpatory accomplice testimony, although no timely and understandable request for such an instruction was made at trial and no objection registered to its omission. Consequently, we review this assignment of error under the plain error rule. Fed.R.Crim.P. 52(b). Where, as here, no specific objection was registered at trial, reversal is required only where a miscarriage of justice would result. United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.), cert. denied, 479 U.S. 882 (1986). We think it is manifest that no miscarriage of justice resulted from the court's failure to instruct, sua sponte, on the manner in which the jury might have evaluated the exculpatory accomplice testimony, and defendants cite no authority to the contrary. See United States v. Vigi, 515 F.2d 290 (6th Cir.), cert. denied, 423 U.S. 912 (1975).
 
 
 26
 B. Denial of New Trial.
 
 
 27
 Defendant Migdaleck also contends the trial court erred in failing to recognize that it could weigh the credibility of witnesses when reviewing a new trial motion on the ground that the verdict was against the great weight of the evidence. Fed.R.Crim.P. 33.
 
 
 28
 The trial court's authority in deciding a motion for a new trial on the ground that the verdict is against the great weight of the evidence, Fed.R.Crim.P. 33, is much broader than its authority on a motion for acquittal based on the sufficiency of the evidence, Fed.R.Crim.P. 29. United States v. Turner, 490 F.Supp. 583, 593 (E.D.Mich.1979), aff'd (without opinion), 633 F.2d 219 (6th Cir.1980), cert. denied, 450 U.S. 912 (1981); United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir.1985). In the former, the court may weigh the evidence and consider the credibility of the witnesses. Turner, 490 F.Supp. at 593; Arrington, 757 F.2d at 1485.
 
 
 29
 Motions for new trial are disfavored and they are granted only with great caution. Turner, 490 F.Supp. at 593. Ordinarily, a new trial should be granted only where the evidence weighs so heavily against the verdict that a miscarriage of justice would result if the verdict were allowed to stand. Turner, at 593; Arrington, at 1485. A decision on a motion for new trial will not be upset on appeal absent an abuse of discretion. Arrington, 757 F.2d at 1486.
 
 
 30
 The theory of defendant Migdaleck's motion is that the principal witness against him, Al Meredith, Sr., was completely unworthy of belief. At the hearing on the motion, defendant contended that without Meredith Sr.'s testimony, there was no proof defendant participated in the arsons, and the arsons were the whole crux of the case. The government contended that it had shown by circumstantial and direct evidence that defendant Midgaleck controlled the operation in that he paid all the participants and controlled the disbursement of insurance proceeds.
 
 
 31
 The trial court denied the new trial motion for two reasons: first, the court did not believe credibility questions could be raised by a new trial motion pursuant to United States v. Johnson,[2] 487 F.2d 1278, 1280 (4th Cir.1973), and there was no basis to substitute the court's judgment for the jury in weighing the credibility of Al Meredith, Sr.; second, the court found the other evidence of Midgaleck's guilt was sufficient to support the verdict. The court noted that the jury was quite perceptive and found defendant failed to present anything to establish that the evidence preponderated heavily against the verdict.
 
 
 32
 Defendant is correct that the trial court failed to recognize that, on a motion for new trial on the ground that the verdict is against the great weight of the evidence, the court was indeed entitled to consider the credibility of the witnesses. If the sole basis for the district court's denial of the new trial motion was that credibility was not a proper subject for the court to examine, we would be inclined to remand this case to the district court to consider the credibility question. However, the court also found that the other evidence inculpating Migdaleck was sufficient to support the verdict, a conclusion well-supported in the record. Moreover, the district court commented favorably on the jury's ability to evaluate the evidence since it acquitted defendant Migdaleck on some of the charges.
 
 
 33
 Given the record supported alternative basis for the trial court's denial of the new trial motion, and the rule that a new trial should be granted on the ground here asserted only when the evidence preponderates heavily against the verdict, we cannot say the trial court abused its discretion in denying defendant's motion.
 
 
 34
 C. Constructive Amendment of Indictment.
 
 
 35
 Defendants Migdaleck and Williams contend that the trial court constructively amended the indictment when it allowed Anita Sackett to testify that Migdaleck inflated the building loss portion of insurance claims by directing the adjustor to "go heavy" on the losses and testify that the claim for the fire at White's residence was indeed inflated.
 
 
 36
 At trial, counsel for defendant Migdaleck objected to Sackett's testimony on the inflation of the building loss portion of insurance claims on relevancy grounds. The objection was overruled.
 
 
 37
 The indictment against defendants Migdaleck and White was based on the premise that defendants were involved in a scheme to defraud insurance companies by intentionally setting fires to residential homes and using the mails to collect the insurance proceeds. The indictment did not allege that defendants inflated the building portion of the insurance claims.
 
 
 38
 A court may not require a defendant to be tried on charges that are not included in the indictment. Stirone v. United States, 361 U.S. 212 (1960). A constructive amendment occurs when the charging terms of the indictment are, in effect, altered by the prosecutor or the court. United States v. Atisha, 804 F.2d 920, 927 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987) (quoting United States v. Jones, 647 F.2d 696, 700 (6th Cir.), cert. denied, 454 U.S. 898 (1981)). A variance occurs when the charging terms of the indictment are left unaltered but the evidence offered at trial proves materially different from those alleged in the indictment. Id.
 
 
 39
 A constructive amendment is per se prejudicial but a variance is not grounds for reversal unless the defendant's substantial rights are affected. United States v. Goldfarb, 643 F.2d 422, 433 (6th Cir.), cert. denied, 454 U.S. 860 (1981).
 
 
 40
 To determine whether a constructive amendment occurred, the court must decide whether the elements of the crime charged were altered. Atisha, 804 F.2d at 927 (citation omitted). (Emphasis added.)
 
 
 41
 The elements the government is required to prove for mail fraud are a scheme to defraud and use of the mails to execute or further the scheme. United States v. Schilling, 561 F.2d 659, 661 (6th Cir.1977).
 
 
 42
 Defendants contend the introduction of evidence that the building loss portion of the claims were inflated, in effect, created an alternate theory for the jury to find defendants had entered into a scheme to defraud and, thus, constituted a constructive amendment of the indictment. The prosecution contends the trial court did not err in admitting the evidence to show the fraudulent nature of the scheme. The government contends the evidence did not change the fact that the scheme to defraud was based on arson but, instead, showed defendants' relationship to the scheme and how they profited by it.
 
 
 43
 We find that the mail fraud charge in the indictment was the same charge described to the jury and conclude that the introduction of the testimony on claim inflation did not change the basic theory of the fraudulent scheme so as to constitute a constructive amendment of the indictment. Atisha, 804 F.2d at 927. Moreover, we hold that had the introduction of the evidence constituted an impermissible variance, any error in admitting the evidence was harmless, United States v. Mahar, 801 F.2d 1477, 1503 (6th Cir.1986), since the testimony at trial centered on the scheme to commit arson, the underlying basis for the mail fraud charge set forth in the indictment.
 
 
 44
 III. Defendant Williams' Denial of Effective Assistance of Counsel.
 
 
 45
 Defendant Williams also contends that she was denied effective assistance of counsel because her attorney also represented defendant White. Specifically, she contends an actual conflict of interest existed because her counsel failed to cross-examine Meredith, Sr. and arsonist Willie Weems, although their testimony made the defense of shifting the blame to White a viable option. Defendant claims the trial court failed to inquire about the joint representation and failed to advise defendant about the right to separate representation as required by Fed.R. of Crim.P. 44(c). Williams made no objection below to the joint representation.
 
 
 46
 Multiple representation is not a per se violation of the sixth amendment right to effective assistance of counsel. Holloway v. Arkansas, 435 U.S. 475, 482 (1978). To establish a sixth amendment violation, a defendant who raises no objection below must show that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).
 
 
 47
 At oral argument, defendant conceded that the trial court's failure to conduct a Fed.R.Crim.P. 44(c) inquiry did not automatically require reversal. This is in accord with the position of those circuits which have addressed the issue. See United States v. Crespo de Llano, 830 F.2d 1532, 1539 (9th Cir.), reh. den., 838 F.2d 1006 (9th Cir.1987) (citations omitted). It is also in accord with the advisory committee notes to Rule 44(c) which state:
 
 
 48
 The failure in a particular case to conduct a rule 44(c) inquiry, would not, standing alone, necessitate the reversal of a conviction of a jointly represented defendant.
 
 
 49
 Williams argues that counsel's failure to cross-examine Meredith, Sr. and Weems demonstrated an actual conflict of interest because their testimony revealed that White was more culpable then Williams thus enhancing the liklihood of success of the shifting blame defense.
 
 
 50
 A conflict of interest must be actual, not hypothetical or merely possible. Cuyler, 446 at 350; United States v. Carter, 721 F.2d 1514, 1537 (11th Cir.), cert. denied, 469 U.S. 819 (1984). The defendant must demonstrate that the interests of the jointly represented defendants were so inconsistent that the pursuit of a plausible argument in favor of one would damage the defense of the other. Carter at 1536; United States v. Romero, 780 F.2d 981, 986 (11th Cir.1986). In order for a shifting blame defense to give rise to an actual conflict of interest, the defense must be realistically available to defense counsel. United States v. Carter, 721 F.2d at 1537; Romero, at 986.
 
 
 51
 Defendant Williams relies heavily on the failure of her trial counsel to cross-examine Meredith, Sr. and Weems on the roles Williams and White played in connection with the fire at the residence owned by Williams. At trial, Meredith, Sr. testified that Williams wanted no part in the fire at first, but stood in line with the rest of the perpetrators to collect her share of the commission after the fire occurred. Weems, the arsonist, testified that prior to the fire, Williams had him review the insurance policy to make sure the property was adequately insured; Williams agreed to the fire and paid Weems a deposit, a sum Weems required to insure Williams was definite about the plan. Williams testified and denied ever speaking with Meredith, Sr. or Weems prior to the fire, and denied she was involved in any fraudulent scheme to set her home on fire.
 
 
 52
 We agree that the evidence of defendant White's participation in the overall scheme, and in particular his involvement in the Williams' fire, was stronger than the evidence the government had against Williams. However, that does not diminish the force of the evidence that Williams was identified as a participant in the scheme to set the home she owned on fire.
 
 
 53
 We think defendant Williams has failed to show that she stood to gain significantly by abandoning the defense pursued by her trial counsel. She does not contend that her co-defendant would have exculpated her. Her only allegation of actual conflict relates to her contention that White is more blameworthy than she is. She does not contend the evidence against her was insufficient to convict. We conclude defendant Williams failed to demonstrate an actual conflict of interest. See Carter, 721 F.2d at 1537, United States v. Benavidez, 664 F.2d 1255, 1260-61 (5th Cir.), reh. denied, 671 F.2d 1380 (5th Cir.), cert. denied, 457 U.S. 1121 and 457 U.S. 1135 (1982).
 
 IV. Defendant Scott
 
 54
 A. Admission of the Check Evidence.
 
 
 55
 Defendant Scott contends the admission into evidence of two checks written by Anders Construction Company to Scott and a 1983 check registry from Anders Construction Company was improper because the evidence was irrelevant, prejudicial, and constituted inadmissible evidence of other crimes and bad acts. Fed.R.Evid. 404(b). At trial, defendant contended the check evidence was inadmissible because the checks were not issued within the time period charged in the indictment and because the checks and the check registry suggested the inference that she was involved in other arson fires for which she was not charged. Defense counsel also contended that the evidence was used to suggest guilt by association.
 
 
 56
 The government contends that the relevance of the two checks was to show that defendant Scott was not just Migdaleck's secretary, as was claimed, but was paid commissions for bringing business to Anders Construction Company, as were other "programmers," and the check registry was introduced to show the relationship between the various parties to the fraudulent scheme.
 
 
 57
 The trial court held the checks were relevant and their probative value was not outweighed by their prejudicial effect.
 
 
 58
 A trial court does not err in admitting evidence that has a tendency to make more or less probable a material proposition for which it is offered, unless it is shown that the probative value of the evidence is substantially outweighed by its prejudicial effect. Fed.R.Evid. 401, 403.
 
 
 59
 We conclude this evidence was relevant and its probative value was not substantially outweighed by its prejudicial effect. There was strong circumstantial evidence, specifically the testimony of Meredith, Sr. and Hassan, that Scott was a principal in the scheme to burn down the premises on Lauder Avenue on March 15, 1983. The essence of Scott's defense was that she was merely a secretary at Anders Construction and was not involved in the arson for profit scheme. The court admitted the challenged checks upon the government's argument that the checks were admissible as proof that Scott was more than just a secretary, but was a "programmer" being paid commission for bringing arson repair business to Migdaleck, just as other "programmers" were. The check register for 1983 was admitted in order to show that commission checks were written to Meredith, Sr., and Jr., Weems, Hassan, Scott, and other defendants in the case at or near the time of the fire to which each was connected in the testimony, and to show the relationship between the various defendants during 1983. An additional reason the check register was offered and admitted is that the government had possession of some, but not all, of the checks relevant to the arson schemes, and wished to prove, by introduction of the check register, the pattern of issuance of checks related to arson schemes.
 
 
 60
 We think both the two checks and the 1983 check register were shown to be relevant and were therefore admissible. Moreover, the defendant Scott has failed to demonstrate that the relevance of the three exhibits was substantially outweighed by the possible prejudicial effect of suggesting Scott's involvement in a still wider scheme of arson for profit than the March 15, 1983 Lauder Avenue fire, a point never argued by the government. We conclude the trial court did not err in admitting the challenged exhibits.
 
 
 61
 B. Sufficiency of the Evidence.
 
 
 62
 Defendant Scott's second issue on appeal is tied to her first. She contends there was insufficient evidence to convict her of mail fraud because the government failed to prove she entered into a scheme with Migdaleck to defraud on the dates charged in the indictment. Scott contends the government's case rested on the two challenged checks and the testimony of immunized convicted arsonists, whose credibility was highly questioned. She notes that defendant Migdaleck was acquitted of the charges on which she was convicted.
 
 
 63
 In order to convict a defendant of mail fraud, the prosecution must prove a scheme to defraud and use of the mails to execute or further the scheme. United States v. Schilling, 561 F.2d 659, 661 (6th Cir.1977). Defendant Scott does not contest the sufficiency of the evidence on the use of the mails element of the mail fraud charge.
 
 
 64
 This court reviews a sufficiency of the evidence claim by determining whether, in viewing the evidence in a light most favorable to the prosecution, a rationale trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979), reh. denied, 444 U.S. 890 (1979).
 
 
 65
 Al Meredith, Sr. testified that he spoke with defendant Scott about the March 15, 1983 fire at Joyce Manns' house before it occurred. Scott introduced Manns as a "customer." During the conversation between Meredith, Sr., Manns and Scott, Meredith, Sr. checked Manns' insurance policy and discussed Manns' potential recovery from the fire and where Manns would stay while repairs were being made.
 
 
 66
 Adar Hassan testified that Meredith, Sr. asked him to meet Scott at Manns' home and set the fire. Hassan met Scott at Manns' home on the day of the fire, went in and, while Scott and the occupants remained downstairs, went upstairs and set the fire.
 
 
 67
 The two checks were admitted to show defendant Scott was paid commissions by defendant Migdaleck.
 
 
 68
 The evidence, taken in a light most favorable to the prosecution, establishes defendant Scott was a participant in the scheme to defraud the insurance company and is sufficient to convict her of two counts of mail fraud, 18 U.S.C. Sec. 1341.
 
 
 69
 V. Defendant McQueen's objection to the Jury Instruction.
 
 
 70
 Defendant McQueen contends the trial court failed to instruct the jury that the interstate movement of the securities must have been reasonably foreseeable by defendant in order to convict him of interstate transportation of securities taken by fraud, 18 U.S.C. Sec. 2314. The court instructed the jury:
 
 
 71
 If the evidence establishes to your satisfaction beyond a reasonable doubt that a Defendant knowingly caused the securities ... to be transported from one state to another, then the Defendant caused the securities to be transported in interstate commerce within the meaning of the statute....
 
 
 72
 [I]t is not necessary that the Defendant knew the security would be transported in interstate commerce.
 
 
 73
 Of course, it is common knowledge that checks or drafts drawn on an out-of-state bank will be sent to that bank for collection. If ... a Defendant knowingly caused the checks ... to be put in interstate commerce, then ... he has caused it to be transported in interstate commerce within the meaning of the law.
 
 
 74
 (Emphasis added.) Defendant objected to the instruction, stating that the instruction should have included language that the interstate transportation of the documents must have been reasonably foreseeable to defendant.
 
 
 75
 The majority of courts addressing the matter have held that the interstate transportation requirement of Sec. 2314 is merely to insure federal jurisdiction and does not impose a requirement that the government prove that the interstate transportation was in any way reasonably foreseeable. United States v. White, 451 F.2d 559, 560 (6th Cir.1971), cert. denied, 405 U.S. 1071 (1972); United States v. Kibby, 848 F.2d 920, 923 (8th Cir.1988); United States v. Squires, 581 F.2d 408, 409-10 (4th Cir.1978).
 
 
 76
 Therefore, we conclude the trial court did not err in failing to instruct the jury that the foreseeability of the interstate transportation of the securities is required to convict defendant of interstate transportation of securities taken by fraud, 18 U.S.C. Sec. 2314.
 
 
 77
 VI. Defendants Perkins and Ware Denial of Severance Motion.
 
 
 78
 Defendants Perkins and Ware argue that joinder was improper under Fed.R.Crim.P. 8(b) since they did not participate in the "same series of acts or transactions" as the other defendants. Alternatively, defendants argues that even if joinder was proper under Rule 8(b), severance should have been granted under Fed.R.Crim.P. 14 because of the substantial prejudice to defendants resulting from the jury considering the evidence against other persons in order to convict the defendants.
 
 
 79
 At trial, all defendants joined in the motion asserting improper joinder, Rule 8(b), and requesting severance due to prejudice, Rule 14; however, only Perkins and Ware address this issue on appeal. The district court held that there was a factual similarity in the counts; the proofs overlapped; the participants had the same objective, to burn homes and collect the insurance; and judicial economy would best be served by joinder. The court further held that the defendants failed to make a strong showing of substantial prejudice and declined to sever the trial under Rule 14.
 
 
 80
 Joinder of multiple defendants under Rule 8(b) is proper if each count in the indictment arises out of the same series of acts or transactions. United States v. Hatcher, 680 F.2d 438, 441 (6th Cir.1982). A group of acts or transactions constitutes a series if they are logically related and involve overlapping proofs. United States v. Swift, 809 F.2d 320, 322 (6th Cir.1987) (citing United States v. Johnson, 763 F.2d 773, 776 (6th Cir.), cert. denied, 474 U.S. 862 (1985)). Rule 8(b) is broadly construed in favor of joinder because Rule 14 provides protection against prejudicial joinder. Swift, at 322. A significant consideration is whether joinder would promote judicial economy. Id. Review of a district court's refusal to sever pursuant to Rule 8 is reviewed for an error of law but is subject to the harmless error standard. Hatcher, 680 F.2d at 442.
 
 
 81
 We conclude joinder was proper. All twenty-three counts of the indictment involved a series of schemes to defraud insurance companies by intentionally setting fire to residential dwellings in order to collect insurance proceeds. The record reveals that defendants Perkins and Ware, as well as the other defendants, were connected to the kingpin of the entire scheme to defraud, defendant Migdaleck, and the mail fraud counts against Perkins and Ware were logically interrelated with the other acts charged in the indictment. See Johnson, 763 F.2d at 776. Moreover, joinder served the interest of judicial economy. See, Swift, 809 F.2d at 322. We conclude, therefore, that joinder was proper under Rule 8(b).
 
 
 82
 Under Fed.R.Crim.P. 14, the trial court may order severance if a defendant is prejudiced by joinder of defendants or claims. Swift, 809 F.2d at 322. This court reviews the district court's denial of a severance motion under Rule 14 for an abuse of discretion, and to establish an abuse of discretion the defendant must make a strong showing of prejudice. Id. The defendant must show the jury was not able to separate and treat distinctively evidence relevant to each defendant and even if some potential jury confusion is established, this must be balanced against society's need for speedy and efficient trials. Id. (quoting United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied, 474 U.S. 1068, and 474 U.S. 1069, and 475 U.S. 1017 (1986)).
 
 
 83
 Defendants' basic contention on appeal is that they were prejudiced by the spillover of evidence relating to the other arson fires because the evidence against them was not overwhelming.
 
 
 84
 Albert Meredith, Jr. testified that defendant Ware contacted him and told him that defendant Perkins wished to speak to him about burning a dwelling. Meredith, Jr. spoke to Perkins in Ware's presence and discussed the arson, the fire repairs, and the monetary advancement. They proceeded to Perkins' home where Meredith, Jr. examined Perkins' insurance policy and determined where the fire should be set. Thereafter, the fire was set by Adar Hassan. Perkins admitted Meredith, Jr., Hassan and Ware into her home and then Perkins and Ware left. Hassan set the fire.
 
 
 85
 Adar Hassan testified that he, Meredith, Jr. and Ware drove to Perkins home on the day of the fire. They discussed what type of fire was required. At Perkins' home, Hassan discussed the location of the fire with defendant Perkins and then asked everyone to leave while he prepared the fire.
 
 
 86
 "Absent a showing of substantial prejudice, spillover of evidence from one case to another does not require severance." Johnson, 763 F.2d at 777 (quoting Gallo, 763 F.2d at 1526).
 
 
 87
 In view of the foregoing evidence, any spillover evidence of other schemes to intentionally set fire to residential dwellings cannot establish substantial prejudice. Moreover, the district court gave the jury cautionary instructions regarding the separate consideration to be give to each defendant. A jury is presumed capable of sorting out evidence and considering each count and each defendant separately. Swift, 809 F.2d at 323. That the jury did so in the instant case is evidenced by the fact that one homeowner was acquitted and defendant Migdaleck was acquitted in part.
 
 
 88
 As this court said in Swift, "even if there is some potential for jury confusion, it is small and does not outweigh 'society's need for speedy and efficient trials.' " Id. (quoting Gallo, 763 F.2d at 1525). The trial court did not abuse its discretion in denying defendants' severance motion under Rule 14.
 
 
 89
 VII. Defendant Perkins' Co-conspirator Hearsay Objection.
 
 
 90
 Defendant Perkins contends that the trial court erred in admitting the hearsay testimony of Adar Hassan and Albert Meredith, Jr.
 
 
 91
 Defendant did not object to the testimony by Hassan that he spoke to Perkins at her home on the day of the fire and Perkins had told him she wanted the fire set in the kitchen. Thus, we are not obligated to address this issue. In all events, the testimony appears admissible as an admission under Fed.R.Evid. 801(d)(2)(A).
 
 
 92
 Defendant did object to the testimony of Albert Meredith, Jr. regarding Perkins' agreement to proceed with plans to set a fire at her home.
 
 
 93
 Meredith, Jr. testified that he had spoken with defendant Perkins and defendant Ware about the possibility of setting a fire at Perkins' residence. He reviewed Perkins' insurance policy and inspected her home to select a location for the fire. He testified that Perkins took some time to think about it but eventually he heard from defendant Ware that Perkins was ready to have a fire.
 
 
 94
 Defendant objected to Meredith, Jr. testifying as to what defendant Ware told him Perkins said as the testimony was hearsay. The court stated the testimony was admissible under Fed.R.Evid. 801(d)(2)(E) as a statement of a co-conspirator.
 
 
 95
 On appeal, defendant Perkins contends the trial court failed to make the preliminary determination required for the admission of a co-conspirator's statement; namely, that a conspiracy existed, and that the statement was made during the course of and in furtherance of the conspiracy.
 
 Fed.R. of Evid. 801(d)(2)(E) provides:
 
 96
 (d) A statement is not hearsay if--
 
 
 97
 * * *
 
 
 98
 * * *
 
 
 99
 (2) The statement is offered against a party and is
 
 
 100
 * * *
 
 
 101
 * * *
 
 
 102
 (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.
 
 
 103
 In United States v. Enright, 579 F.2d 980 (6th Cir.1978), this court held that the admissibility of a co-conspirator's statement under Rule 801(d)(2)(E) is for the court to decide under Fed.R.Evid. 104(a) and the preliminary question to be answered is whether the co-conspirator's statement falls within the Rule, that is, whether a conspiracy existed and whether the statement was made in the furtherance of the conspiracy. Id. at 984, 985.
 
 
 104
 The United States Supreme Court in Bourjaily v. United States, 483 U.S. 171 (1987), agreed that Rule 104(a) governs the admissibility of a co-conspirator's statement and a preponderance of the evidence standard applies. Id. at 175. The Court also held that the trial court may consider the out-of-court statement of the alleged co-conspirator sought to be admitted when making its preliminary determination on whether the co-conspirator statement is admissible under 801(d)(2)(E). Id. at 180. However, the court declined to decide whether the lower court could rely solely upon the co-conspirator's hearsay statement to establish that a conspiracy existed by a preponderance of the evidence under Rule 104(a). Id.
 
 
 105
 In this case, defendant Perkins contends that Meredith, Jr.'s hearsay testimony that Ware told him that Perkins said she was ready to have the fire was the only testimony linking Perkins to the conspiracy. That is not the case. Meredith, Jr. testified that he spoke with Perkins about a plan to set fire to her home prior to the time the alleged statement by Ware was made, and Hassan testified that he discussed the location of the fire with Perkins the day the fire was set.
 
 
 106
 In light of the above testimony, the hearsay statement of Meredith, Jr., that Ware said that Perkins said she was ready to have the fire, is a statement in furtherance of the conspiracy, made by a co-conspirator during the course of the conspiracy. Nor is the Meredith, Jr. testimony challengable as double hearsay, since the Perkins statement to Ware is "not hearsay" under Fed.R.Evid. 801(d)(2)(A), since it is a statement of admission. Therefore, the trial court did not abuse its discretion in admitting the co-conspirator statements as evidence. See United States v. Rios, 842 F.2d 868, 874 (6th Cir.1988), cert. denied, 109 S.Ct. 840 (1989).
 
 
 107
 Defendant Perkins also contends that the trial court failed to make a determination on the record that sufficient testimony existed to connect Perkins with the conspiracy charge, when the court held that Meredith, Jr. could testify as to what Ware told him Perkins said under the co-conspirator exception to the hearsay rule, 801(d)(2)(E). The short answer to Perkins' contention is that the court, in passing upon the challenge to the Meredith, Jr. testimony, was not obligated to announce on the record the preliminary finding of fact which conditioned the admissibility of the testimony under Fed.R.Evid. 801(d)(2)(F). See United States v. Curro, 847 F.2d 325, 328 (6th Cir.), cert. denied, 109 S.Ct. 116 (1988).
 
 
 108
 VIII. Trial Court Vouched for Prosecutor.
 
 
 109
 All defendants except Scott contend the trial court abused its discretion in failing to grant a mistrial on the basis that the court vouched for the credibility of the prosecution when, in response to a request by counsel for defendant Ware that she be allowed to verify after each day of trial that each exhibit admitted that day was actually received in evidence, the court said it would rely on the honesty of the prosecutor and denied counsel's request.
 
 
 110
 "The decision to order a mistrial rests in the trial court's discretion." Hamm v. Jabe, 706 F.2d 765, 767 (6th Cir.1983).
 
 
 111
 During the direct examination of Al Meredith, Sr., the prosecution moved to admit certain documentary evidence. Counsel for one defendant asked permission to examine the documents. It was revealed that not all defense counsel were given a copy of the prosecution's proposed exhibits; instead, the exhibits were delivered to Migdaleck's attorney to circulate among defense counsel. The court required the prosecution to provide each defendant with a copy of all the exhibits. Counsel for defendant Ware then inquired if counsel could, after each day of trial, verify that each admitted exhibit was used.[3] The court said:
 
 
 112
 I am going to rely on the United States attorney to be honest. He always has been. He always will be.
 
 
 113
 Outside the presence of the jury, defendants moved for mistrial asserting the court vouched for the credibility of the prosecution. The court denied the motion.
 
 
 114
 As the Supreme Court said in Glasser v. United States, 315 U.S. 60 (1942), reh. denied, 315 U.S. 827 (1942):
 
 
 115
 Perhaps the court did not attain at all times that thoroughgoing impartiality which is the ideal, but our examination of the record as a whole leads to the conclusion that the substantial rights of the petitioners were not affected. The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting.
 
 
 116
 Id. at 83. (Citations omitted; emphasis added.)
 
 
 117
 This was an isolated comment in a rather lengthy trial and the comment was made during a general discussion regarding the identification and introduction of the prosecution's exhibits. Moreover, the court, in its instructions to the jury, favorably commented upon the professionalism of every attorney. We do not think the cited comment by the trial court denied defendants a fair trial.
 
 
 118
 We AFFIRM.
 
 
 
 *
 The Honorable Ronald E. Meredith, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 On appeal, following the conviction on remand, the defendant in Stulga again contested the court's instruction on accomplice testimony. The trial court left unchanged that portion of the instruction objected to here; instead, the court merely added that exculpatory accomplice testimony should be considered and weighed along with all other evidence and could be the bases of a not guilty verdict. In United States v. Stulga, 584 F.2d 142, 144-145 (6th Cir.1978), this court held the instruction given by the trial court was sufficient
 
 
 [2]
 Johnson involves a new trial motion based on newly discovered evidence, not based on a verdict that is against the great weight of the evidence
 
 
 [3]
 Counsel for defendant Ware explained at oral argument that "used" meant "received."