**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Najib Mansour ATISHA (85–1537),
Michael Covintgon (85–1775),
Defendants-Appellants.**

Nos. 85–1537, 85–1775.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 23, 1986.
Decided Oct. 30, 1986.

Charles R. Scales, Detroit, Mich., for Covington.

N.C. DeDay LaRene, Detroit, Mich., for Atisha.

John N. Thompson, Jr., Asst. U.S. Atty., Detroit, Mich., Patricia G. Blake (argued), for U.S.

Before LIVELY, Chief Judge, MERRITT, Circuit Judge, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Michael Covington and Najib Mansour Atisha appeal from their convictions for conspiring to steal goods from interstate commerce in violation of 18 U.S.C. § 371.[1] Atisha also appeals from his conviction for possessing goods stolen from interstate commerce in violation of 18 U.S.C. § 659.[2]

## I.

The indictment charged that, between January 1981 and March 1982, defendants Covington and Atisha, and others, were involved in a conspiracy to hijack tractor-trailers filled with goods, to store the goods for a short period of time and then to convert the goods to their own use. The key actor in the conspiracy was a man named John Ranzoni. The indictment alleged in part:

> It was part of said unlawful conspiracy that JOHN RANZONI, would use his contacts through a roofing business which he conducted to arrange said thefts from interstate shipments.

> It was further part of said unlawful conspiracy that JOHN RANZONI would use employees of his business to conduct said thefts; and that other contacts which he had made during the course of said roofing business would be contacted to receive and/or "fence" said stolen goods and chattels.

The only overt acts in furtherance of the conspiracy enumerated in the indictment were the hijackings of one truckload of chickens and one truckload of dry goods. It further was alleged that defendant Covington was involved in the actual truck hijackings, whereas defendant Atisha had agreed to purchase a portion of the stolen goods. Although indictments were issued in November of 1982 and January of 1984, these were dismissed by the government. The final indictment was issued on October 30, 1984, with a superseding indictment

---

**1.** Section 371 provides in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both....

**2.** Section 659 provides in relevant part:

> Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any ... motor-truck, or other vehicle, ... with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property; or
> *Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen;*
>
> . . . . .
>
> Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; but if the amount or value of such money, baggage, goods or chattels does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both....

(Emphasis added).

being issued on March 28, 1985 to correct technical errors.

The jury trial began on April 8, 1985 for defendants Covington and Atisha, and another coconspirator, Dimitrius Kyriazakos. At trial, the government produced evidence. of a third hijacking of a truckload of beef whose contents were unloaded at Atisha's place of business. Atisha was convicted on both the conspiracy count and the possession of stolen goods count.[3] He was sentenced on June 14, 1985 to five-years confinement on each count, the prison terms to run concurrently, and was fined a total of $10,000. The jury was not able to reach a jury verdict with respect to Kyriazakos or defendant Covington. Covington was retried before a jury on June 3, 1985, convicted of conspiracy in violation of 18 U.S.C. § 371 and he was sentenced to five-years confinement on September 6, 1985.[4]

On appeal, Atisha asserts that he was denied a fair trial when testimony relating to the beef hijacking scam was admitted into evidence. Specifically, Atisha asserts that the government violated its "open file" policy and that the new evidence constituted a constructive amendment to, or prejudicial variance of, the indictment. Under either theory, Atisha argues that the district court abused its discretion in denying his motion for a mistrial due to the severe prejudice he experienced. Defendant Covington asserts on appeal that the lengthy pre-indictment delay violated his Fifth Amendment right to due process and that the post-arrest delay violated his Sixth Amendment right to a speedy trial. Covington also asserts that he was denied a fair trial when the trial court limited his cross-examination of the government's key witness. For the reasons which follow, we affirm each conviction.

## II.

By maintaining an "open file" policy, the United States Attorney permitted the defendants' counsel full access to the evidence which the government intended to put forth as well as the theories upon which it intended to rely. On the second day of Atisha's trial, however, the United States Attorney, for the first time, expressed his intention to elicit testimony relating to the hijacking of a truckload of beef, an offense which was not specifically enumerated in the indictment as being one of the overt acts in furtherance of the conspiracy. The government's attorney announced that he had just recently learned of this theft, its relevance to the conspiracy charge and the willingness of both Dwight Benning and Wayne Smith to testify about this theft.[5] Each defendants' counsel objected to the admission of this evidence and moved for a mistrial.[6] Although Atisha argued that having relied on the government's open file policy he was prejudiced by the introduction of the new evidence, and that the admission of the evidence constituted a variance of or a constructive amendment to the indictment, the district court disagreed, ruling that the evidence was admissible to prove a conspiracy, or as "other acts" evidence under Fed.R.Evid. 404(b),[7] and reasoned that a mistrial was not warranted.

### A. "Open File"

█ While Fed.R.Crim.P. 16 places some requirements on the government to dis-

---

**3.** The possession of stolen goods count was solely related to the truckload of dry goods and not the truckloads of chicken or beef.

**4.** Kyriazakos was not retried, having decided to enter a plea of guilty.

**5.** Dwight Benning was a coconspirator who later agreed to testify for the government and was the first individual to inform the government of this particular theft. Wayne Smith was also a government witness and coconspirator.

**6.** Defendant Covington does not raise this as an issue, however, having received a second trial.

**7.** Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

close evidence to a defendant,[8] the government is not compelled by statute or the Constitution to disclose evidentiary details or " 'to explain the legal theories upon which it intends to rely at trial.' " *United States v. Gabriel,* 715 F.2d 1447, 1449 (10th Cir.1983) (quoting *United States v. Burgin,* 621 F.2d 1352, 1359 (5th Cir.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980)). *See also Weatherford v. Bursey,* 329 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977) ("[t]here is no general constitutional right to discovery in a criminal case"). If the government agrees to maintain an "open file" policy, thereby disclosing its evidence and theories to the defendant, however, the government is obligated to adhere to that agreement. *See United States v. Herring,* 582 F.2d 535, 540–41 (10th Cir.1978); *United States v. Millet,* 559 F.2d 253, 256–57 (5th Cir. 1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 759 (1978). A defendant is justified in relying upon the government's representations of maintaining open records; breaking an open file agreement by withholding important evidence or a key theory can obviously cause great prejudice to a defendant.

■ However, the mere fact that a defendant is not made aware of certain evidence until shortly before or at trial does not mandate a finding that the government has violated its open file policy. Rather, if the government had not secreted the evidence, and had made the evidence available to the defendant within a reasonable time after the government learned of the evidence's significance or reliability, there has not been a violation of an open file policy.

8. Primarily, Rule 16 provides that the government must, upon request of the defendant, disclose statements of the defendant, the defendant's prior record, certain documents, tangible objects, reports of examinations and tests.

9. In support of his argument that the government should not be allowed to rely on this newly discovered evidence, and that admission of the evidence constitutes an "ambush," the defendant relies on a number of suppression of evidence cases. These are totally irrelevant for analyzing the case at bar because the suppression of evidence cases deal with suppressing

*See, e.g., United States v. Franklin,* 704 F.2d 1183, 1191 (10th Cir.) (evidence was not secreted and its relevance was not readily apparent), *cert. denied,* 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983); *Herring,* 582 F.2d at 541 (no abuse to admit evidence which was not secreted and was made available to the defendant before the trial began). *Cf. United States v. Kelly,* 420 F.2d 26 (2d Cir.1969) (where prosecution failed to disclose evidence pursuant to a discovery order).[9]

An open file agreement is essentially an informal discovery agreement; as with other discovery orders, it is generally within the district court's discretion to award sanctions when there has been a violation. *See Franklin,* 704 F.2d at 1191. Therefore, even if the government violated its open file policy, it would still be within the district court's discretion to determine what the appropriate sanction—such as excluding the evidence or awarding a continuance or mistrial—should be.

In the case at bar, the jury trial began on a Tuesday; the previous Friday, witness Benning had a conversation with Special Agent Lopez about the hijacking of a truckload of beef. The United States Attorney was not immediately notified of this new information and the first partial verification of Benning's statement was not received until Monday, the day before trial, when coconspirator Wayne Smith was interviewed by Lopez and the United States Attorney. Atisha argues that, although the evidence was not intentionally withheld, the government was obligated to inform him of this evidence on Friday, or at least

exculpatory evidence. *See, e.g., United States v. Sukumolachan,* 610 F.2d 685 (9th Cir.1980) (per curiam); *Freeman v. Georgia,* 599 F.2d 65, 69 (5th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980); *United States v. Hibler,* 463 F.2d 455, 459 (9th Cir.1972); *United States v. Bryant,* 439 F.2d 642 (D.C.Cir.1971). In the instant case, there are no allegations of actual suppression or secreting the evidence, nor is this evidence exculpatory. Similarly, this is not a case where the prosecution *prevents* a defendant from discovering evidence. *See United States v. Baum,* 482 F.2d 1325 (2d Cir.1973).

before his counsel delivered an opening statement on the first day of trial.

■ The United States Attorney asserted that, although Benning had informed the government of a beef theft, the government did not have enough information to know whether the evidence would be used at trial until the trial was under way. At trial, the United States Attorney stated to the district court:

> Mr. Benning did advise us the weekend before that he was aware of what basically he testified to. He did not know the name of the company. We had no details. We had no way to verify what company that came from. We couldn't verify the theft. It was not until the following week.... We did not know the name of the company involved with the meat until after we had begun this trial.

There is no assertion, or indication, that the government secreted this evidence, and we do not believe that an open file policy obligates the government to instantaneously inform a defendant of each new piece of information regardless of its significance or foundation. In the instant case, it was established that the beef incident was still under investigation when the trial began and that the government had yet to decide whether it could use the evidence; once it was decided that the evidence could be used, the government informed the defendants of its existence. We do not find the delay to have been unreasonable under the circumstances and do not believe that there was an open file violation.

The defendant nonetheless asserts that he was severely prejudiced by justifiably relying on the government's representations regarding its evidence and theory of the case; that defense counsel committed himself to a theory of defense and a strategy which he might not have chosen had he been informed about the beef incident. Specifically, defense counsel committed

himself to placing the defendant on the stand and represented to the jury that only two thefts were involved. Atisha argues that the government's conduct was tantamount to "sandbagging" and that a new trial was essential in order to provide him an opportunity to restructure his defense.[10]

Defense counsel's opening statement indeed indicates that Atisha's defense primarily focused on rebutting the government's case regarding the stolen chickens and dry goods. Defense counsel asserted that the evidence would establish that Atisha was never involved in the stolen chicken incident and that Atisha believed the dry goods were merely salvage merchandise. On more than one occasion, defense counsel also reminded the jury of its duty to determine whether the government has proven the specific charges in the indictment beyond a reasonable doubt. Although defense counsel arguably committed himself during opening argument to proceed in a particular matter, we do not believe that the district court was required to exclude the evidence or grant a mistrial.

■ First, the mere fact that the defendant was suprised by the evidence does not mandate that the evidence be excluded. *See Herring,* 582 F.2d at 541; *United States v. Wixom,* 529 F.2d 217, 220 (8th Cir.1976) (per curiam). Second, there is no rule that evidence must be excluded or a mistrial granted on the basis that a defendant had committed himself to a theory which was undermined by new evidence. *See United States v. Bavers,* 787 F.2d 1022, 1028 (6th Cir.1985). There is *always* a possibility that new evidence will be discovered, even if the defense was structured around assurances made by the government. This may be particularly so when the indictment charges a conspiracy.

The defendant argues, however, that the district court used the incorrect legal standard in reviewing his motion for a mistrial. The district court, relying on *Brock v.*

---

**10.** Atisha's counsel also argued that Atisha was prejudiced because the defense was not prepared to cross-examine Smith since Smith had never before implicated Atisha. However, the record reflects that defense counsel had adequate time to prepare for Smith's appearance on the stand, and that there was no renewal of Atisha's request for a continuance.

*North Carolina,* 344 U.S. 424, 427, 73 S.Ct. 349, 350, 97 L.Ed. 456 (1953), reasoned that a mistrial motion must be granted only upon a showing of "manifest necessity"; absent a showing of serious prejudice, or a denial of due process, however, the district court stated that there was no requirement to grant a mistrial. The defendant argues that the court should not have used the "manifest necessity" test; rather, since the defendant was requesting the mistrial, as opposed to the government, a less strict standard should apply. Since the court did not use a lesser standard, the defendant asserts that the district court's exercise of discretion cannot be trusted. We are not persuaded by the defendant's argument in this regard and find that the district court's articulation and application of the test was not in error.

The defendant is correct in noting that more than one test for reviewing the granting of mistrials has been articulated by the Supreme Court, depending on whether the government or the defendant makes the motion. *Compare Brock,* 344 U.S. at 427, 73 S.Ct. at 350 (" 'a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice' ") (quoting *Wade v. Hunter,* 336 U.S. 684, 690, 69 S.Ct. 834, 838, 93 L.Ed. 974 (1949)), *with United States v. Dinitz,* 424 U.S. 600, 609–10, 96 S.Ct. 1075, 1080–81, 47 L.Ed.2d 267 (1976) (if defendant has " 'no choice' but to request a mistrial," and if there is a "legitimate claim of seriously prejudicial error," a mistrial can be granted upon the defendant's motion even in the absence of a "manifest necessity").

However, both *Brock* and *Dinitz* are double jeopardy cases where the issue presented was whether the retrial of a defendant placed him in double jeopardy. Under *Brock,* double jeopardy attaches if the court sua sponte, or pursuant to the government's motion, grants a mistrial and there was no manifest necessity for doing so; under such circumstances, the defendant cannot be retried. In contrast, if the defendant requests a mistrial, the general rule is that "any barrier to a retrial" is removed, *United States v. Thomas,* 728 F.2d 313, 318 (6th Cir.1984); there need not be a "manifest necessity" for a trial court to permissibly grant a defendant's motion for a mistrial, and double jeopardy will not attach. *Dinitz,* 424 U.S. at 610, 96 S.Ct. at 1081.

In the instant case, we are not reviewing a trial court's grant of a mistrial as in *Dinitz* or *Brock;* rather, we are reviewing a denial of a mistrial motion and must determine under what circumstances a mistrial *must* be granted, not simply when a mistrial may permissibly be granted. Since granting a mistrial is generally within a trial court's discretion, *see Brock,* 344 U.S. at 427, 73 S.Ct. at 350, we must decide when a trial court has abused its discretion by failing to grant a mistrial. *See United States v. Faulkenbery,* 472 F.2d 879, 882 (9th Cir.) (appeals court may reverse a denial of a mistrial motion only upon a showing of abuse of discretion), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973).

We initially note that the district court arguably applied the *Dinitz* standard by inquiring into whether the defendant would suffer any serious prejudice were the trial to continue, and we agree with the district court that the allegation of prejudice in this case does not rise to the level of serious prejudice.[11] Further, the district court inquired into whether the defendant would be denied due process were the trial not aborted. We believe that a determination of the fairness to the accused is the primary concern in ruling upon a mistrial motion; if, by admitting this evidence, the

---

**11.** In *Dinitz,* the defendant had been faced with judicial or prosecutorial misconduct, and the Supreme Court spoke in terms of seriously prejudicial *error,* rather than simply serious prejudice. We do not believe that the prosecutor's conduct or the court's admission of this evidence can be classified as seriously prejudicial error; therefore, regardless of whether the test is serious prejudice or seriously prejudicial error, the defendant's allegations do not warrant a finding that a mistrial should have been granted.

trial was not rendered unfair, we do not believe the district court can be said to have abused its discretion by denying defendant's motion for a mistrial. *See, e.g., United States v. Nace,* 561 F.2d 763, 768–69 (9th Cir.1977) (admitting the evidence did not render the trial unfair). Our review of defense counsel's opening statement, as well as the record in this case, convinces us that the trial was not rendered unfair by the admission of this new evidence. Therefore, we hold that the district court did not abuse its discretion by denying defendant's motion for a mistrial on the theory that the government violated its open file policy which consequently resulted in severe prejudice to the defendant.

### B. Amendment or Variance

It is clear that "after an indictment has been returned its charges may not be broadened except by the grand jury itself." *Watson v. Jago,* 558 F.2d 330, 333 (6th Cir.1977). *See also Stirone v. United States,* 361 U.S. 212, 216, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). In the instant case, defendant Atisha notes that the grand jury never reviewed evidence relating to the stolen beef and that the admission of this evidence therefore constituted an impermissible constructive amendment to or prejudicial variance of the indictment. *See United States v. Jones,* 647 F.2d 696, 700 (6th Cir.) ("material alteration of the theory of criminal liability" by the court constituted an impermissible amendment to the indictment), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981).

> "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment."

*Watson v. Jago,* 558 F.2d at 334 (quoting *Gaither v. United States,* 413 F.2d 1061, 1071 (D.C.Cir.1969)) (emphasis in the original).[12]

To determine whether there has been a constructive amendment, the court must decide "whether there has been a modification at trial *in the elements of the crime charged.*" *Id.* at 334 (explaining *Stirone v. United States*) (emphasis added).

■ We agree with the district court that introducing the evidence of the stolen beef did not constitute a constructive amendment to, or variance of, the indictment. The indictment alleged a conspiracy which clearly encompassed the theft of this truckload of beef; the time-frame, modus operandi, and characters were identical to those alleged in the indictment. In support, we note that "there is no requirement in conspiracy cases that the government disclose even all the overt acts in furtherance of the conspiracy." *United States v. Giese,* 597 F.2d 1170, 1180 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). Further, by admitting evidence of another overt act, the theory of the case was not changed, the defendant was not charged with a different substantive crime, and the elements of the crime charged were not altered. We therefore conclude that the district court did not err in refusing to grant a mistrial or to exclude the evidence on this basis.

### III.

Defendant Covington argues that his convictions cannot stand because the pre-indictment delay was so unreasonable that he was denied due process under the Fifth Amendment, and that the post-arrest delay violated his right to a speedy trial under the Sixth Amendment.

### A. Pre-indictment Delay

Although the crimes for which Covington was convicted occurred between January

---

**12.** Although variances of and amendments to an indictment are both prohibited, only amendments are considered per se prejudicial, where-as variances are subject to the harmless error rule. *Watson v. Jago,* 558 F.2d at 334.

1981 and May 1982, the indictment which he was charged under was not issued until October 30, 1984.[13] Two earlier indictments had been issued in November 1982 and January 1984, but were subsequently dismissed pursuant to the government's request. The government claims that the January 1984 indictment was dismissed when coconspirator Benning decided to cooperate with the prosecution, providing the government with an opportunity to investigate the criminal conspiracy in more detail. Covington does not challenge this assertion; rather, he argues that the government arrested him on bogus charges of non-payment of child support in 1982 when the government's intent was actually to investigate his involvement in this conspiracy. Although he provides no evidence to substantiate this claim, Covington asserts that the government was obligated to inform him of its investigation and to indict him at an earlier date.

 The concern over a lengthy delay in filing charges against a defendant is often focused on the staleness of those charges; for that reason, the acceptability of a pre-indictment delay is generally measured by the applicable statute of limitations. *See United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966). However, the Fifth Amendment also imposes due process restraints on the length of a pre-indictment delay. A showing of prejudice to the defendant, without more, is not enough to prove a due process violation; rather, there must also be a consideration of the reasons for the delay. *United States v. Lovasco,* 431 U.S. 783, 791, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1983). A pre-indictment delay which is instigated by the government so as " 'to gain tactical advantage over the accused' " may violate a defendant's due process rights, *id.* at 795, 97 S.Ct. at 2051 (quoting *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971)), whereas a delay resulting from in-

vestigative efforts "does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time." *Id.* 431 U.S. at 796, 97 S.Ct. at 2052. *See also United States v. Napue,* 401 F.2d 107, 115 (7th Cir.1968), *cert. denied,* 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1969).

 The defendant asserts that he was prejudiced by the delay because the government's key witness had a faulty memory which resulted from the delay. Covington asserts that this prevented him from reconstructing the events of the days in question.[14] Although such allegations, if true, may satisfy the prejudice prong of the Fifth Amendment test, *see United States v. Feinberg,* 383 F.2d 60, 65 (2d Cir.1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968), Covington does not come forth with any evidence to rebut the government's claims that this delay was necessitated by investigative efforts. Even were the defendant's allegations of the 1982 bogus charges true, that fact would not necessarily mandate a conclusion that the delay was instituted by the government merely to gain a tactical advantage over him. We find, therefore, that the pre-indictment delay, although lengthy, did not violate the defendant's Fifth Amendment right to due process.

### B. Post-arrest Delay

 The Sixth Amendment speedy trial guarantee

> is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.

*United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). This guarantee is not implicated when charges are formally dropped against the

---

**13.** A superseding indictment was issued on March 28, 1985 to cure minor technical deficiencies.

**14.** Covington does not allege that there was insufficient evidence to convict him, however.

defendant. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). Therefore, we reject Covington's assertion that the delay should be measured from the day he was arrested in 1982 since formal charges were not pending against him as of that date. Rather, we will judge the constitutionality of the delay only between the date Covington was re-indicted, October 30, 1984, and the date he was first brought to trial, April 8, 1985.

Although the Speedy Trial Clause does not provide guidance for determining when a defendant has been denied his right under the clause, the Supreme Court adopted a balancing test in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972):

> We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*See also United States v. Gibson,* 513 F.2d 978, 980 (6th Cir.1975) (per curiam); *United States v. Borman,* 437 F.2d 44, 46 (2d Cir.) (per curiam), *cert. denied,* 402 U.S. 913, 91 S.Ct. 1394, 28 L.Ed.2d 655 (1971).

■ The defendant asserts that he was prejudiced by the failing memories of the prosecution's witnesses. The Court acknowledged in *Barker v. Wingo* that the impairment of a defendant's ability to prepare a defense is the most serious prejudice which can result from post-arrest delay. 407 U.S. at 532, 92 S.Ct. at 2192. However, there is absolutely no indication that the prejudice resulted from the post-arrest delay; only six months elapsed from the day Covington was indicted to the date he was tried. Further, there is nothing to indicate that the government lacked justifiable reasons for the delay. We conclude, there-

fore, that defendant Covington was not denied his Sixth Amendment right to a speedy trial.

## IV.

During the course of defendant Covington's second trial, the district court limited defense counsel's cross-examination of government witness Benning. The defendant argues that this limitation prevented him from discrediting the government's key witness and deprived him of the right to a fair trial. The defendant goes so far as to suggest that if his right to cross-examine Benning had not been limited, he would not have been convicted. We find that this argument lacks merit.

■ While a defendant has a Sixth Amendment right to confront and cross-examine witnesses, it is not an absolute right; the "trial court may, in its discretion, limit its scope." *Stevens v. Bordenkircher,* 746 F.2d 342, 346 (6th Cir.1984). In some instances, it may be an abuse of discretion to limit cross-examination regarding "a witness' bias, prejudice, or motive for testifying, ... or curtail cross-examination concerning whether testimony is given with the expectation of immunity or out of fear or coercion...." *Id.*[15]

■ We find no support in the record for Covington's assertion that the testimony which would have been adduced at trial was relevant to the issues of bias, prejudice or motive for testifying. Benning was questioned on both direct and cross-examination regarding the agreement he had with the government in exchange for his testifying; the trial court did not limit this line of questioning. Rather, the court only limited Covington's questioning of Benning concerning the nature of Benning's probation sentence for breaking and entering, a misdemeanor offense, as well as police investigations of Benning which never result-

---

**15.** We note that defendant's reliance on *Loraine v. United States,* 396 F.2d 335 (9th Cir.), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968), is misplaced. *Loraine* involved a prosecution's suppression of evidence, whereas this case concerns a trial court's exercise of discretion in limiting cross-examination. The mere fact that evidence was not adduced at trial does not indicate that it was "suppressed" by the prosecution.

ed in a conviction.[16] The prosecutor specifically objected to the evidence relating to police investigations on the grounds of relevance. At no time did Covington argue to the trial court that this evidence was relevant to the issue of bias, prejudice or motive; nor did he assert that further charges were dropped against Benning as the result of a separate agreement with the government. We do not detect any error in the court's limitation of Covington's right to cross-examine Benning; further, given the abundance of evidence against him, we find no basis for defendant Covington's assertion that his conviction hinged on this cross-examination of Benning.

Accordingly, the defendants' convictions are AFFIRMED.

---

**16.** From our reading of the transcript, we are not persuaded that the testimony Covington wished to elicit was admissible under Fed.R. Evid. 609(a) which permits the use of prior convictions as impeachment evidence if:

> [T]he crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of

admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involves dishonesty or false statement, regardless of the punishment.

Benning was convicted of entering property without permission, a misdemeanor offense which does not involve dishonesty or a false statement. The other investigations did not even result in convictions.