16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James ALTER, Defendant-Appellant.
 No. 92-2458.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1994.
 
 Before: NORRIS and SILER, Circuit Judges; HEYBURN, District Judge.*
 PER CURIAM.
 
 
 1
 James Alter appeals his conviction and sentence for one count of bank fraud. He contends that the trial court inaccurately calculated his sentence, improperly instructed the jury, abused its discretion in limiting cross-examination of a crucial witness, and erred in declining to grant his motion for acquittal. For the reasons outlined below, we affirm defendant's conviction but remand the case to the district court for resentencing.
 
 I.
 
 2
 On April 15, 1992, a grand jury returned a one-count indictment against Alter, charging that he had used the checking accounts of several companies in which he had an interest to defraud two Michigan banks. The practice, commonly known as "check kiting," is prohibited by 18 U.S.C. Sec. 1344.[1]
 
 
 3
 According to the indictment, Alter wrote a series of checks between December 1988 and June 1989, which he knew to be backed by insufficient funds. These checks were drawn on accounts maintained at the First of America Bank ("FOA") and the First Federal Savings Bank and Trust ("FFSBT").
 
 
 4
 In the early 1980s, Alter and business associate Matthew Schuler operated Registration and Information Management Services ("RIMS"). RIMS maintained commercial checking accounts at FOA and FFSBT. Between 1986 and 1988, Alter helped to incorporate three other businesses: Afton Affiliates, Nogatco, Inc., and Acquivist Unlimited. However, none of these companies generated income and, in order to mask this financial reality, Alter began to kite checks between the two banks. Ultimately, FOA refused to honor payment of four checks, which resulted in a $216,000 loss to FFSBT.
 
 
 5
 Alter's first trial began on July 13, 1992. However, on its second day, his attorney appeared to be intoxicated and the judge declared a mistrial. His second trial resulted in a conviction and the district court sentenced defendant to thirty-seven months' imprisonment, ordered restitution to FFSBT in the amount of $216,000, and three years of supervised release.
 
 II.
 A. Sentencing Issues
 
 6
 This court reviews the factual findings of the district court that relate to sentencing decisions for clear error, while the trial court's application of the guidelines to the facts is accorded due deference. 18 U.S.C. Sec. 3742(e).
 
 1. Obstruction of Justice
 
 7
 The trial court relied upon U.S.S.G. Sec. 3C1.1 to increase Alter's offense level by two points for obstruction of justice.[2]
 
 
 8
 During trial, Alter testified that an employee of FFSBT encouraged him to take advantage of the bank's "float" policy to meet business expenses. The judge found this testimony to be "inherently incredible" and concluded that it constituted perjury "offered in the hope that the jury was unsophisticated in financial matters." While Application Note 1 indicates that this "provision is not intended to punish a defendant for the exercise of a constitutional right," Note 3(b) explicitly states that the provision applies to perjury.
 
 
 9
 The Supreme Court recently rejected a constitutional challenge to the obstruction of justice enhancement. United States v. Dunnigan, 113 S.Ct. 1111 (1993). In the course of its opinion, the Court provided the following guidance to trial courts:
 
 
 10
 [I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out.
 
 
 11
 Id. at 1117. The Court looked to 18 U.S.C. Sec. 1621 for its definition, noting that inaccurate testimony "due to confusion, mistake or faulty memory" does not constitute perjury. Id. While it is preferable for the trial court to make findings that address each element of the alleged perjury, it is enough if "the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Id.; see also United States v. Medina, 992 F.2d 573, 591 (6th Cir.) (trial court must make a specific finding that the defendant lied), petition for cert. filed, 62 U.S.L.W. 3321 (U.S. Oct. 18, 1993) (No. 93-607).
 
 
 12
 The trial court found that Alter's financial transactions defied all reasonable or usual commercial practice and that the explanation of his actions was offered to dupe unsophisticated jurors. In our view, these findings comply with the requirements outlined in Dunnigan and justify a sentencing enhancement for obstruction of justice.
 
 2. Multiple Victim Enhancement
 
 13
 The trial court also increased Alter's offense level by two points because the crime represented a scheme to "defraud more than one victim." U.S.S.G. Sec. 2F1.1(b)(2)(B). This subsection "refers to a design or plan to obtain something of value from more than one [entity]." U.S.S.G. Sec. 2F1.1, comment. (n. 3). The indictment charged a scheme to defraud two banks. Although only FFSBT sustained a loss, the court found this to be "just happenstance." Because this enhancement requires only a plan to obtain something of value and not actual loss, the district court properly counted both banks as victims. We therefore affirm the corresponding two-level increase in Alter's base offense level.
 
 3. Role in the Offense
 
 14
 Finally, the guidelines permit a two-level enhancement to the base offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. Sec. 3B1.1(c). The district court applied this provision to Alter, finding "[i]t was not activity which he could have carried out on his own. He needed a number of other people and I don't believe that they were knowledgeable with respect to any criminal intent." The court also concluded that Alter's business associates were "naive" and "victims."
 
 
 15
 According to United States v. Carroll, 893 F.2d 1502, 1509 (6th Cir.1990), before a district court imposes this enhancement it must find that "a defendant engage[d] in criminal activity with at least one other criminally culpable person." Because the trial court failed to identify such a person, we conclude that its application of this enhancement to Alter's sentence was inappropriate.
 
 B. Jury Instructions
 
 16
 Alter next objects to the court's jury instructions:
 
 
 17
 Check kiting consists of drawing checks on an account in one bank and depositing them in an account in a second bank when neither account has sufficient funds to cover the amounts drawn. Just before the checks are returned for payment to the first bank, the kiter recovers them by depositing checks drawn on the account in the second bank. Due to the delay created by the collection of funds by one bank from the other, known as the float time, an artificial balance is created.
 
 
 18
 I instruct you that if you find beyond a reasonable doubt that the defendant knew of the kiting scheme and by his actions or omissions caused the kiting scheme to continue or in some manner aided the kiting scheme and that all elements of the offense have been established beyond a reasonable doubt, then check kiting does constitute a violation of federal law as described in the indictment.
 
 
 19
 According to Alter, the instruction wrongly implies that check kiting alone constituted the crime for which he had been charged.
 
 
 20
 The first cited paragraph of jury instructions is taken almost verbatim from United States v. Stone, 954 F.2d 1187, 1188 n. 1 (6th Cir.1992). Moreover, Stone was charged, like Alter, with "a scheme or artifice to defraud" in violation of 18 U.S.C. Sec. 1344(1), which encompasses check kiting schemes. Id. at 1190.
 
 
 21
 Alter, however, argues that the court should have fully explained to the jury that it must find that check kiting was done in the context of a scheme to defraud. In this case, the court provided the following instruction:
 
 
 22
 The scheme to defraud element required under Section 1344 [sic] is not defined according to technical standards. The standard is a reflection of moral uprightness or fundamental honesty, fair play, and right dealing in the general and business life of members of society. To act with intent to defraud means to act knowingly and with specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial ... gain to oneself.
 
 
 23
 While the instructions given in similar cases have sometimes been more thorough, see United States v. Montgomery, 980 F.2d 388 (6th Cir.1992), taken as a whole, those now before us were more than adequate to inform the jury of the charge against Alter.
 
 C. Limitation of Cross-Examination
 
 24
 Alter next argues that the district court erred in limiting his counsel's cross-examination of his former business associate Matthew Schuler.[3]
 
 
 25
 During trial, Alter developed the theory that FFSBT had informed him that, until a pending loan was formalized, he could cover any shortfall by writing checks without sufficient funds. According to Alter, this line of credit was secured by an accounts receivable package of $1,000,000 from a dental group. However, the trial court sustained an objection based upon relevance when Alter attempted to question Schuler about the matter.
 
 
 26
 We first note that the trial court retains discretion to limit cross-examination. United States v. Atisha, 804 F.2d 920, 929 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987). Of course, the court may not completely bar examination into a relevant subject matter during cross-examination. United States v. Alford, 282 U.S. 687 (1931).
 
 
 27
 Our review of the entire record leads us to conclude that the trial court did not abuse its discretion in limiting the cross-examination of Schuler, which was lengthy and wide-ranging. Moreover, Alter himself had an opportunity to testify about the funds that were allegedly due from the dental group. Under the circumstances, defendant has failed to demonstrate any prejudice suffered as the result of the trial court's ruling.
 
 D. Motion for Judgment of Acquittal
 
 28
 Alter argues that the trial court should have granted his motion for judgment of acquittal because the government failed to establish the requisite intent to defraud.
 
 
 29
 On review, this court must determine "whether, after reviewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Montgomery, 980 F.2d at 393 (citations omitted). In the present case, some $14,000,000 of checks backed by insufficient funds were written and a float of $216,000 was maintained. It was therefore well within the bounds of rationality for a jury to conclude that defendant possessed the requisite intent to defraud.
 
 
 30
 The district court properly denied defendant's motion for judgment of acquittal.
 
 E. Pro Se Claims
 
 31
 In addition to the issues already discussed, defendant filed a supplemental brief that raises arguments that his attorney has declined to advance. After careful review, we find that they are without merit.
 
 III.
 
 32
 For the foregoing reasons, we affirm defendant's conviction but vacate his sentence and remand the matter to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Section 1344 reads as follows:
 Whoever knowingly executes, or attempts to execute, a scheme or artifice--
 (1) to defraud a financial institution; or
 (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretences, representations, or promises;
 shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
 18 U.S.C. Sec. 1344 (West Supp.1991).
 
 
 [2]
 Section 3C1.1 provides as follows: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."
 
 
 [3]
 Schuler cooperated with the government and was not prosecuted. He did, however, agree to repay a portion of the bank's losses