16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joe Ivory JOHNSON, Defendant-Appellant.
 No. 93-5615.
 United States Court of Appeals, Sixth Circuit.
 Feb. 17, 1994.
 
 Before: GUY and SILER, Circuit Judges; and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Joe Ivory Johnson challenges his jury conviction and sentence for conspiracy to distribute and distribution of cocaine in violation of 21 U.S.C. Secs. 841(a)(1), 846. Six issues are raised on appeal: (1) whether there was sufficient evidence to support the conviction; (2) whether alleged prosecutorial misconduct denied Johnson the right to a fair trial; (3) whether the district court erred in admitting tape-recorded evidence; (4) whether the district court erred in denying Johnson's motion for a mistrial; (5) whether Johnson was deprived of a fair and impartial jury; and (6) whether the district court made sentencing errors regarding the quantity of cocaine attributable to Johnson, and his role as an organizer and leader of five or more participants.[1] For reasons stated hereafter, we affirm.
 
 I. Background
 
 2
 On October 14, 1992, a vehicle owned by Johnson was stopped and searched by a deputy sheriff in Utah. Michael Bowers and James Wheeler were in the vehicle at the time. Inside the vehicle, in a false compartment in the rear, a duffle bag was found containing nearly seven "bricks" or kilos of cocaine,[2] a loaded .357 revolver, and electronic scales. Two days later, Bowers confessed the drug scheme to police officers and agreed to complete a controlled delivery of the cocaine to Johnson.
 
 
 3
 Bowers stated that Johnson, who was his cousin, asked him to travel to Los Angeles, California to pick up some drugs and then transport them to Johnson in Nashville, Tennessee in exchange for $1,000. Bowers travelled to Los Angeles with three companions, Wheeler, David Johnson, and "Lopez." There, a man named "Pablo" supplied them with the cocaine. David Johnson and Bowers kept in contact with defendant Johnson during the trip.
 
 
 4
 As a result of Bowers' arrest, his scheduled delivery of cocaine to defendant Johnson in Nashville was late. Therefore, in order to make a controlled delivery to Johnson without his becoming suspicious, Bowers telephoned Johnson and reported that he had been arrested for DUI in Utah. Johnson immediately asked where the van was located and whether everything was "cool." Johnson further stated he was coming to Utah because he had too much to lose. Bowers informed Johnson that he could be bailed out for $1,500. Johnson then asked to speak with the officer in charge. When an officer got on the phone, Johnson identified himself as the owner of the van and arranged to wire transfer $1,500 to the police station. Bowers later called Johnson to state that he and Wheeler had been released. Johnson told him to "come on in" and reminded him that he was supposed to call Johnson to check in every time he stopped.
 
 
 5
 Bowers delivered the van, with one kilogram of cocaine still inside, to his mother's house, as he had done in the past when making drug runs for Johnson, and called Johnson to come and pick it up. When Johnson arrived to retrieve the van, officers observed him transfer $1,500 to Bowers and $2,000 to Wheeler. Johnson was arrested after he exited his car, got in the van, started the engine, turned the headlights on, and placed the vehicle in reverse.
 
 
 6
 Johnson was convicted of possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine. The district court found Johnson accountable for seven kilograms of cocaine, mandating an offense level of thirty-two. The court increased his base level by four for his role as a leader or organizer of a conspiracy involving five or more participants. Johnson's offense level of 36 made him eligible for a sentence in the range of 188 to 235 months. The court sentenced him to 204 months, coupled with a $100 special assessment, five years supervised release, and a $10,000 fine.
 
 II. Discussion
 
 7
 A. Sufficiency of the evidence.
 
 
 8
 The standard of review in a criminal case for claims of insufficient evidence is " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This standard gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts." Jackson, 443 U.S. at 319.
 
 
 9
 "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.' " United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.) (quoting United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983)), cert. denied, 476 U.S. 1123 (1986). This court "will reverse a judgment for insufficiency of evidence only if th[e] judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial." United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984).
 
 
 10
 Johnson claims there was insufficient evidence on the conspiracy count to show that he acted in furtherance of the conspiracy, that he participated in the conspiracy, or that he agreed to conspire. As to the substantive count, Johnson argues the evidence was insufficient to show that he had possession of the cocaine.
 
 
 11
 The government was required to prove that Johnson agreed to violate the drug laws and that he knew of, and intended to join and participate in, the conspiracy. United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991). No formal or express agreement, however, needed to be shown. United States v. Hitow, 889 F.2d 1573, 1577 (6th Cir.1989). An agreement may be inferred from acts done in furtherance of the conspiracy. Moreover, "[o]nce the existence of the conspiracy is proven, only slight evidence is necessary to connect a defendant with the conspiracy. It is only necessary that a defendant know of the object of the conspiracy, associate himself with it, and knowingly contribute his efforts in its furtherance." Id. (citations omitted).
 
 
 12
 The evidence presented at trial was sufficient for a rational trier of fact to find the essential elements of conspiracy. Bowers testified that Johnson hired him to make a trip to Los Angeles, California to pick up the cocaine. Johnson kept in contact with Bowers and his companions during the trip. Johnson also paid Bowers and Wheeler for retrieving the cocaine. Then, Johnson attempted to drive away the van containing the cocaine. From this evidence, it is clear not only that Johnson was part of a conspiracy, but also that he was the director of the conspiracy.
 
 
 13
 As to the substantive count, Johnson's primary complaint is that the evidence failed to show that there was cocaine in the van when Johnson began to drive off. Alternatively, if there was cocaine in the van, Johnson argues that the evidence failed to show he had knowledge of its existence.
 
 
 14
 Whether there was cocaine in the van when Johnson began to drive off is not dispositive of the question of whether he possessed cocaine with intent to distribute, as "[c]onstructive, as well as actual, possession of a controlled substance coupled with the intent to distribute is a violation of 21 U.S.C. Sec. 841(a)(1)." United States v. Martinez, 588 F.2d 495, 498 (5th Cir.1979). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). Constructive possession may be proved by direct or circumstantial evidence. Id.
 
 
 15
 In this case, Johnson had constructive possession over the controlled substance. He owned the vehicle used for transporting the cocaine, and he directed Bowers and Wheeler to drive it to pick up the cocaine. He paid bail money to effectuate their release from jail so they could return with the controlled substance. Further, as soon as they returned, he regained actual possession of the van. From these facts, it is clear that Johnson had either actual or constructive possession over the controlled substance transported in the van. Therefore, the evidence presented at trial was sufficient to convict Johnson for possession with intent to distribute cocaine in violation of Sec. 841(a)(1).
 
 
 16
 B. Prosecutorial misconduct.
 
 
 17
 Johnson argues that the following list represents instances of prosecutorial misconduct which occurred at trial denying him the right to a fair trial.
 
 
 18
 (a) The government erroneously stated that Johnson paid in full the $24,000 purchase price for his van less than one month after he purchased it from the dealer, even though it was financed for forty-eight months.
 
 
 19
 (b) The government stated to the jury that Johnson was "one of the biggest dope dealers in Middle Tennessee."
 
 
 20
 (c) The government stated that Johnson had a "very, very desperate defense, a defense that doesn't know where it is going."
 
 
 21
 (d) The government improperly vouched for the credibility of government witnesses Michael Bowers and Ernest Bishop.
 
 
 22
 (e) The government made an improper appeal to the social conscience of the jury by commenting on the drug problem in the United States.
 
 
 23
 Johnson concedes that this court's review must be for plain error as he did not object to the foregoing alleged examples of prosecutorial misconduct.
 
 
 24
 " 'Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial.' " United States v. Goodlett, 3 F.3d 976, 978 (6th Cir.1993) (quoting United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988)). When errors are reviewed for plain error, reversal is only "appropriate in exceptional circumstances, where a miscarriage of justice would result." Id.
 
 
 25
 The alleged prosecutorial misconduct on the part of the government did not reach the level of plain error. The claimed errors were not so apparent that they should have been obvious to the trial judge without objection, nor did they strike at the fundamental fairness of the trial. Johnson's counsel failed to object at trial. This case is not one of exceptional circumstances where a miscarriage of justice would result absent reversal.
 
 
 26
 Notwithstanding the foregoing, we note that the government's conduct in stating that Johnson was one of the biggest dope dealers in Middle Tennessee was inappropriate, as there was no basis for that in the evidence. Moreover, the prosecutor erred when he suggested defendant paid cash of $24,000 for the van, based upon the lack of a lien showing on the title. Had defendant objected, the court could have easily cleared up that problem. Finally, when the prosecutor told the jury that "no lawyer can suborn perjury," implying he did not tell the witnesses to lie, we do not consider this to be vouching for the witnesses. As to the other acts, the prosecutor may have been overreacting to the heat of the moment in closing argument. The acts could have been cured by the court at the time, but as Johnson's counsel failed to object to such conduct at trial, we do not decide whether the government's conduct would constitute reversible error on a more stringent standard of review than plain error.
 
 
 27
 C. Admission of tape-recorded evidence.
 
 
 28
 Johnson alleges the court improperly admitted tape-recorded evidence of an incriminating conversation between Johnson, Wheeler and Bowers. The subject tape was obtained by the use of a trasmitting device placed by government agents on Wheeler. Johnson claims that the tape was never authenticated in violation of Fed.R.Evid. 901(b)(5), (6). He also complains that the voices on it were never identified. Johnson concedes that the court cautioned the jury that the government had the obligation to identify the voices on the tape; however, he argues that the government failed to ever make any identification. He argues that the court's action constituted plain error as it resulted in a complete miscarriage of justice.
 
 
 29
 Fed.R.Evid. 901(b)(5), (6) merely provide examples of methods to authenticate or identify voices sought to be entered into evidence. See Fed.R.Evid. 901(b) (stating "[b]y way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule."). The advisory committee notes on Rule 901 point out that "such available procedures as requests to admit and pretrial conference afford the means of eliminating much of the need for authentication or identification." Id. In this case, the government filed a pretrial motion to resolve tape-recording related issues. Johnson filed no response thereto. Johnson's only pretrial objection to the tape-recorded evidence was that there was a slight discrepancy between what the government believed one recorded conversation said, and what Johnson felt it said.
 
 
 30
 The admission of tape recordings is within the sound discretion of the trial court. United States v. Sivils, 960 F.2d 587, 597 (6th Cir.), cert. denied, 113 S.Ct. 130 (1992); United States v. Moreno, 933 F.2d 362, 375 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991). At trial, Johnson made no objections to the admission of the tape-recorded evidence. Therefore, review by this court must be for plain error, those errors which would result in a miscarriage of justice if not reversed on appeal. Goodlett, 3 F.3d at 978.
 
 
 31
 The court's decision to admit the tape-recorded evidence in this case was well within its discretion, especially in light of the fact that Johnson did not challenge the admissibility of the tapes. See Moreno, 933 F.2d at 375.
 
 
 32
 D. Motion for mistrial.
 
 
 33
 Johnson claims that the trial court erred in denying his motion for mistrial based on the testimony of government witness, and prison inmate, Ernest Bishop, who stated that Johnson had threatened his life.
 
 
 34
 This court reviews the denial of a motion for mistrial for abuse of discretion. United States v. Chambers, 944 F.2d 1253, 1263 (6th Cir.1991), cert. denied, 112 S.Ct. 1217, and cert. denied, 112 S.Ct. 1680 (1992); United States v. Atisha, 804 F.2d 920, 926 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987). "[A] determination of the fairness to the accused is the primary concern in ruling upon a mistrial motion...." Atisha, 804 F.2d at 926. If the trial was not rendered unfair, this court will not conclude that the district court abused its discretion. Id. at 926-27. "Generally, 'the subsequent striking of erroneously admitted evidence accompanied by a clear and positive instruction to the jury to disregard it cures the error' unless the stricken evidence is so prejudicial that its harmful effect cannot be eliminated." Chambers, 944 F.2d at 1263 (quoting United States v. Greene, 400 F.2d 847, 848 (6th Cir.1968)).
 
 
 35
 The trial court did not abuse its discretion in denying Johnson's motion for mistrial. The trial was not rendered unfair by Bishop's testimony. Moreover, any possible prejudicial effect resulting from Bishop's testimony was cured by the court's limiting instruction.
 
 
 36
 E. Fair and impartial jury.
 
 
 37
 Johnson and Wheeler were originally scheduled for a joint trial, so they were required to combine their ten peremptory strikes. However, when Johnson began his opening statement by referring to codefendant Wheeler's criminal history, the trial judge granted a mistrial and severance to Wheeler. Consequently, Johnson contends that the he was limited to five peremptory challenges which denied him the right to a fair and impartial jury.
 
 
 38
 Fed.R.Crim.P. 24(b) provides in pertinent part:
 
 
 39
 If the offense charged is punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges.... If there is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly.
 
 
 40
 Rule 24(b) clearly states that defendants are entitled jointly to 10 peremptory challenges. The Rule further states that the court "may," in multiple defendant cases, allow the defendants additional peremptory challenges. Whether additional challenges are granted, however, is a decision left to the sound discretion of the trial court. See United States v. Broadus, 7 F.3d 460, 463 (6th Cir.1993); United States v. Mosely, 810 F.2d 93, 96 (6th Cir.), cert. denied, 484 U.S. 841 (1987).
 
 
 41
 In this case, when the jury was selected, there were two defendants in the case. Therefore, the trial court was following the letter of Rule 24(b) when it allowed the defendants to jointly have 10 peremptory challenges. The fact that one of the defendants was later dismissed has no bearing on the propriety of the jury selection, especially in light of the fact that Johnson's counsel's conduct was the reason codefendant Wheeler's trial had to be severed.
 
 
 42
 In United States v. Amer, 824 F.2d 906, 907-08 (11th Cir.1987), cert. denied, 484 U.S. 1068 (1988), the trial court granted two codefendants ten peremptory challenges to be exercised either separately or jointly. The defendants decided to split their peremptory challenges and exercise them separately. After the jury was selected, the trial court granted one of the defendants' motions to sever. The other defendant, Amer, objected on the grounds that he was entitled to select a new jury, because he was deprived of his full complement of ten peremptory challenges. Id. at 907. In affirming the trial court's rejection of Amer's argument, the Eleventh Circuit stated as follows:
 
 
 43
 Thus, we conclude that where there are codefendants at the time a jury is selected, unless there was reversible error in trying those defendants jointly, there is no error in allowing a total of ten peremptory challenges, even if one codefendant subsequently drops out of the case. A defendant is not entitled to a jury composed only of members of his own choosing, if at the time of selection he properly has a codefendant, regardless of whether the codefendant ends up being jointly tried.
 
 
 44
 Id. at 907-08. As there were codefendants when the jury was selected in this case, there was no error.
 
 
 45
 F. Sentencing.
 
 
 46
 (1) QUANTITY DETERMINATION:
 
 
 47
 Johnson claims the district court erred in finding him accountable for seven kilograms of cocaine. He argues that he should not have been held responsible for the amount of cocaine found in the van in Utah, while it was in the control of Wheeler and Bowers. He claims the most he should have been held responsible for was the one kilogram of cocaine contained in the van when he attempted to pick it up from Bowers' mother's house.
 
 
 48
 A district court's conclusions regarding the quantity of drugs involved for sentencing purposes will be reviewed only for clear error. United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 906, and cert. denied, 498 U.S. 989, and cert. denied, 498 U.S. 990 (1990). The quantity of drugs must be established by a preponderance of the evidence. Id. at 1301-02. Further, a defendant may be sentenced based upon quantities of drugs attributable to other members of a conspiracy, provided the district court finds that those quantities were known to the defendant or were reasonably foreseeable to him. United States v. Medina, 992 F.2d 573, 590-91 (6th Cir.1993).
 
 
 49
 The district court's quantity determination was not clear error. Johnson directed Bowers and Wheeler to pick up the cocaine for him in Los Angeles, California. He knew, or should have reasonably foreseen, the amount of cocaine which would be retrieved from Pablo. The quantity of drugs was established by a preponderance of the evidence. Johnson's claim that he should not be held responsible for drugs that he directed to be delivered to him is without merit.
 
 
 50
 (2) ROLE AS ORGANIZER OR LEADER OF FIVE OR MORE
 
 PARTICIPANTS:
 
 51
 Johnson claims the district court erred in increasing his offense level four levels for his role as a leader or organizer of five or more participants. He claims the evidence was insufficient to warrant such a finding.
 
 
 52
 A district court's finding that a defendant was a leader or organizer under USSG Sec. 3B1.1 is a finding of fact which will not be disturbed on appeal unless clearly erroneous. United States v. Perkins, 994 F.2d 1184, 1191 (6th Cir.), cert. denied, 114 S.Ct. 279 (1993). Further, "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." Id. When a district court makes an enhancement under Sec. 3B1.1, it should also make specific findings as to the identity of the five or more participants in the criminal enterprise. United States v. Stubbs, 11 F.3d 632, 641 (6th Cir. Dec. 14, 1993).
 
 
 53
 In this case, the district court made specific findings of fact that the criminal enterprise included defendant Johnson, Wheeler, Bowers, Pablo, Lopez and David Johnson. The court's finding that defendant Johnson was the leader or organizer of the group is supported by the record. As the court's findings are not clearly erroneous, Johnson's four-level enhancement is affirmed.
 
 III. Conclusion
 
 54
 After considering Johnson's challenges to his conviction and sentence and finding them to be without merit, we affirm the decision of the district court.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Johnson filed an untimely brief pro se in this case raising four additional issues. After considering the four new issues, we find them devoid of merit
 
 
 [2]
 The cocaine weighed 6,981 grams, 29 grams short of seven kilograms. The cocaine was 93 to 95 percent pure, indicating it had not yet been cut to increase the volume of the drug